**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | Case No. 23-11710 (BLS) |
| Debtors. | (Jointly Administered) |
|  | <u>Hearing Date:</u><br>November 14, 2023 at 1:00 p.m. (ET) |
|  | <u>Objection Deadline:</u><br>November 7, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS
FOR ENTRY OF ORDER (I)(A) ESTABLISHING
BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY
ALL ASSETS, (B) SCHEDULING AUCTION AND SALE HEARING,
AND (C) APPROVING FORM AND MANNER OF NOTICE
THEREOF, (II) APPROVING SALE OF SUBSTANTIALLY ALL
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF**

IronNet, Inc. and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows

in support of this motion (this "**Motion**"):

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seeks entry of the following:

a.      the "**Bidding Procedures Order**," substantially in the form attached hereto as
<u>Exhibit A</u>:

i.      authorizing and approving the "**Bidding Procedures**," substantially in the
form attached to the Bidding Procedures Order as <u>Exhibit 1</u>, in connection
with the sale (the "**Sale**") of (a) substantially all of the Debtors' assets
(collectively, the "**Assets**") or the purchase of equity of the reorganized

---

[1]      The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet
International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate
headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

Debtors (the "**Reorganized Equity**") pursuant to a chapter 11 plan or (b) any portion of the Assets and/or Reorganized Equity, as applicable;

ii.    establishing December 12, 2023, at 5:00 p.m. (prevailing Eastern Time) as the deadline by which all bids must be received by the Debtors pursuant to the Bidding Procedures;

iii.    scheduling an auction in connection with the Sale (the "**Auction**") for December 14, 2023;

iv.    scheduling a hearing to consider approval of any Sale of Assets (other than pursuant to a chapter 11 plan) (the "**Sale Hearing**") to be held on or about December 19, 2023;

v.    authorizing and approving (A) notice of the Auction and Sale Hearing, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 2</u> (the "**Auction and Sale Notice**") and (B) publication of the contents of the Auction and Sale Notice in the national edition of *The New York Times*, *The Wall Street Journal*, *USA Today* or another publication with similar national circulation (the "**Publication Notice**"); and

vi.    granting related relief; and

b.    one or more orders (each, a "**Sale Order**" and, together with the Bidding Procedures Order, the "**Proposed Orders**"), as applicable, authorizing and approving:

i.    the sale of the Assets free and clear of all liens, claims, encumbrances, and other interests (collectively, and as more fully set forth below, the "**Interests**") to the winning bidder (the "**Successful Bidder**"); and

ii.    granting related relief.

## <u>JURISDICTION AND VENUE</u>

2.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

3. The statutory and legal predicates for the relief requested herein are sections 105, 363, 1123, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018, 3020, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

## BACKGROUND

4. On October 12, 2023 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases, is set forth in detail in the *Declaration of Cameron Pforr, President and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "**First Day Declaration**"),[2] and is incorporated herein by reference.[3]

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declaration.

[3] The First Day Declaration and other relevant case information is available on the following website maintained by the Debtors' claims and noticing agent, Stretto, Inc. ("**Stretto**"):  https://cases.stretto.com/ironnet.

## **PROPOSED TRANSACTION**

6.      The Debtors commenced the Chapter 11 Cases to facilitate a timely and efficient process aimed at maximizing the value of the Debtors' estates for the benefit of all stakeholders.  To that end, in connection with the DIP Term Sheet, the Debtors and the DIP Lenders agreed to a framework for a plan of reorganization, as well as milestones that allow the Debtors to pursue a "dual-track" sale and confirmation process in an organized manner under the Court's supervision.  The Debtors intend to file a proposed chapter 11 plan (the "**Proposed Plan**") in the coming weeks incorporating the terms set forth in the DIP Term Sheet, which will include a toggle structure to enable the Debtors to pivot to either a Sale transaction or a plan, dependent upon which alternative provides for the greatest return to the Debtors' stakeholders. The Debtors also anticipate filing a motion seeking a hearing to establish solicitation procedures in connection with the Proposed Plan (the "**Solicitation Motion**").[4]  The Debtors anticipate that the solicitation period for the Proposed Plan will run substantially concurrent with the marketing process set forth herein.

7.      The goal of the dual-track process is to allow the Debtors to pursue one of the following outcomes:  (i) confirmation of the Proposed Plan with the DIP Lenders as the sponsor; (ii) a Sale transaction, with such proceeds to be distributed pursuant to the Proposed Plan; or (iii) confirmation of the Proposed Plan with an Alternate Plan Sponsor (as defined herein).  The process proposed herein is designed to ensure that the Debtors obtain the highest and best outcome for all of the Debtors' stakeholders through the ultimate plan structure.

---

[4]    Either in connection with the Solicitation Motion or by separate motion, the Debtors will seek relief authorizing and approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "**Contracts**") and the determination of amounts necessary to cure all monetary defaults thereunder.  The Debtors anticipate seeking such relief with respect to both (a) the Auction and any Sale resulting therefrom (as set forth in the Bidding Procedures), and (b) the confirmation of the Debtors' plan of reorganization.

8.     As set forth in greater detail in the First Day Declaration, the Debtors have been involved in an "on again – off again" marketing effort that began in December 2022. During the ten months preceding the Petition Date, the Debtors, through their then investment banker, Guggenheim Partners ("**Guggenheim**") contacted a wide array of potential bidders, but these efforts ultimately proved unsuccessful.  Guggenheim is no longer acting as the Debtors' investment banker.

9.     Immediately following the Petition Date, the Debtors' independent director, Ivona Smith (the "**Independent Director**"), began a process for identifying a banker to run a comprehensive marketing process to identify (i) a purchaser for a going-concern sale of some or all of the Debtors' Assets; (ii) an alternate plan sponsor (an "**Alternate Plan Sponsor**") willing to provide greater recoveries than those contemplated under the DIP Term Sheet (as such terms will be incorporated into Debtors' plan to be filed in the coming weeks); or (iii) any other transaction that maximizes the value of the Debtors' estates and provides for the highest and best recoveries to the Debtors' stakeholders.  On or about October 17, 2023, after interviewing several firms, the Independent Director selected Capstone Capital Markets LLC ("**Capstone**") as the investment banker to run the Sale process on behalf of the Debtors.

10.     With the assistance of Capstone, acting on behalf of the Debtors and under the direction of the Independent Director, the Debtors intend, among other things, to foster an open and competitive process to identify any higher or otherwise better bid(s) for the Debtors' Assets, whether constituting all or substantially all of the Debtors' businesses or some portion thereof, than that provided for in the DIP Term Sheet.

11.     Through the Proposed Plan, as set forth in the DIP Term Sheet, the DIP Lenders have agreed to exchange the DIP Loans for equity in the Reorganized Debtors pursuant

to a chapter 11 plan.  The DIP Term Sheet also contemplates, among other things, that the Debtors' trade creditors will be unimpaired and the Debtors' prepetition noteholders will receive new notes equal to the principal amount of funds initially advanced, less any payments made to such lender on account of such note.  At or prior to the hearing on this Motion with respect to the Bidding Procedures, to ensure transparency for any interested bidders, the Debtors will identify a reserve threshold that must be cleared by any bidder looking to acquire substantially all of the Debtors' Assets pursuant to a sale or under a plan (the "**Minimum Qualified Bid**").  If more than one Minimum Qualified Bid is received, an Auction will be conducted if necessary.  Any other Bids (defined below), such as for specific Assets or in the form of partial plan sponsorship, will be evaluated by the Debtors in consultation with counsel to the official committee of unsecured creditors, if appointed (the "**Committee**") and counsel to the DIP Lenders (collectively, the "**Consultation Parties**")[5] and qualified for Auction (if applicable) and/or ultimately accepted if determined to constitute higher or otherwise better offers, when considered in tandem with other prevailing proposals.

12.    If the Debtors do not receive an asset-sale Bid for substantially all of the Assets or an offer to be the Alternate Plan Sponsor that is at least the Minimum Qualified Bid, the Debtors will pursue confirmation of the Proposed Plan consistent with the DIP Term Sheet (although subject to any plan modifications that may result from activity and negotiations in the marketing process).  Even in such a scenario, however, it is possible that the Debtors pursue a sale hearing pursuant to this Motion to seek approval under section 363 of the Bankruptcy Code for one or more discrete sales of less than all of their Assets.

---

[5]    As provided in the Bidding Procedures, during any period in which a Consultation Party has submitted a Qualified Bid (as defined herein) (other than the Proposed Plan) and has become a Qualified Bidder (as defined herein), such Consultation Party shall no longer be considered a Consultation Party under the Bidding Procedures..

13.     The Debtors believe that the proposed Bidding Procedures and the related relief requested in the Motion provide all involved parties with sufficient time and information necessary to formulate a Bid.  Further, the Debtors believe that the Bidding Procedures provide sufficient time for the Debtors to efficiently pursue a value-maximizing sale and marketing process and best position them to achieve their goals in the Chapter 11 Cases, including preservation of the Debtors' operations as a going concern.  The Debtors submit that the sale and marketing process has been structured to maximize bidder interest in the Assets, and respectfully request that the Court grant the relief requested herein.

## SUMMARY OF KEY DATES AND DEADLINES[6]

14.     The Debtors propose to establish the following key dates and deadlines related to the sale process, subject to the Court's availability:

**Key Proposed Auction and Sale-Related Dates**
**(subject to the Court's availability):**

| Event | Proposed Date |
|---|---|
| Deadline to serve Bidding Procedures Order on Transaction Notice Parties | Within three days of entry of Bidding Procedures Order |
| Sale Objection Deadline | December 12, 2023, at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | December 12, 2023, at 5:00 p.m. (prevailing Eastern Time) |
| Commencement of Auction (if necessary) | December 14, 2023, at 10:00 a.m. (prevailing Eastern Time) |
| Deadline to file Notice of Successful Bidder[7] | By 5:00 p.m. (prevailing Eastern Time) as soon as reasonably practicable after closing the Auction, if any, and in any event |

---

[6]     Capitalized terms used in this summary and not otherwise defined herein shall have the meaning ascribed to them elsewhere in this Motion or in the Bidding Procedures, as applicable.  This summary is qualified in its entirety by reference to the provisions of the Bidding Procedures.  In the event of any inconsistencies between the provisions of the Bidding Procedures and the summary, the terms of the Bidding Procedures shall govern.

[7]     In the event that an Auction is not held because the Debtors receive only one Qualified Bid, then the Debtors shall file a notice no later than 5:00 p.m. (prevailing Eastern Time) on December 14, 2023. In the event that the Auction is not held because the Debtors do not receive a Qualified Bid, the Debtors shall file a notice no later

| Event | Proposed Date |
|---|---|
| | not less than 24 hours following closing the Auction |
| Auction Objection Deadline; Buyer-Related Objection Deadline[8] | December 15, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Sale Hearing[9] | On or about December 19, 2023 |
| Deadline to consummate approved Sale | December 21, 2023 |

## PROPOSED BIDDING PROCEDURES

### I.    BIDDING PROCEDURES

15.    The Bidding Procedures are designed to maximize the value of the Debtors' estates while advancing these Chapter 11 Cases along expeditiously.  Among other things, the Bidding Procedures set forth procedures for interested parties to access due diligence, the manner in which Bidders and Bids (each, as defined in the Bidding Procedures) become "qualified," the receipt and negotiation of Bids, the conduct of any Auction, the selection and approval of any Successful Bidder, and the deadlines with respect to the foregoing.

16.    The Bidding Procedures contain the following provisions that are to be highlighted pursuant to Local Rule 6004-1(c), which are more fully described in the Bidding Procedures and the proposed Bidding Procedures Order:

---

5:00 p.m. (prevailing Eastern Time) on December 14, 2023. To the extent the Successful Bidder is an Alternate Plan Sponsor, the Notice of Successful Bidder will identify the Alternate Plan Sponsor and identify the timeline for the Debtors' filing an amendment to their plan of reorganization reflecting the Alternate Plan Sponsor (the "**Amended Plan**").

[8]    The Buyer-Related Objection Deadline only applies to objections other than with respect to executory contracts and unexpired leases that are related to the identity of the Successful Bidder(s).  For buyer-specific objections relating to adequate assurance of future performance under executory contracts and unexpired leases to be assumed by such buyer, the Debtors have proposed the same Buyer-Related Objection Deadline in the Contract Notice and Procedures Motion.

[9]    To the extent the Successful Bidder is an Alternate Plan Sponsor, the Sale Hearing will be cancelled and the Debtors will seek confirmation of the Debtors' Amended Plan.

| | |
|---|---|
| **Provisions Governing the Qualification of Bidders** | Any bidder that submits a Qualified Bid (as defined below) will be considered a "**Qualified Bidder**." |
| **Provisions Governing Qualified Bids:** | In order for a Bid to be a "**Qualified Bid**," each Bid must be written in English and meet at least the following requirements: |

(a) <u>Proposed Sale Transaction</u>. Each Bid must clearly propose a Sale transaction for some or all of the Assets and/or the Reorganized Equity, or any combination thereof. Each Bid must specify which of such Assets or Reorganized Equity are to be included in or excluded from the proposed Sale.

(b) <u>Purchase Price</u>. Each Bid will set forth the purchase price (the "**Purchase Price**") to be paid for the Assets and/or Reorganized Equity, as applicable, denominated in United States dollars. Upon the request of the Debtors, a Bid must specify how the Purchase Price is to be allocated among the Assets or Reorganized Equity that is the subject of the Bid. In order to be a Qualified Bid, the Bid must provide for the payment in full, in cash, of all DIP Obligations (as defined in the *Interim Order (A) Authorizing the Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Granting Adequate Protection to Prepetition Secured Parties, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing, and (F) Granting Related Relief* [Docket No. 47] and any final order entered with respect thereto) unless otherwise agreed to by the DIP Agent and DIP Lenders (the "**Approved Non-Cash Consideration**"). To the extent a Bidder seeks to be an Alternate Plan Sponsor, the Bid shall clearly set forth the proposed treatment for each class of claims and interests.

(c) <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount of 10% of the proposed purchase price into an escrow account to be identified and established by the Debtors, except as may be otherwise agreed by the Debtors, in consultation with the Consultation Parties, on the other hand (the "**Good Faith Deposit**"); *provided*, *however*, that the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors shall not be required to submit a deposit in connection with the Proposed Plan or any Bid.

(d) <u>Executed Agreement</u>. Each Bid must include an executed purchase agreement, including exhibits, schedules, and ancillary agreements related thereto and any other material documents integral to such Bid, signed by an authorized representative of such Qualified Bidder, pursuant to which the Qualified Bidder proposes to effectuate a Sale (an "**Asset Purchase Agreement**"). Each Bid for the Assets must also include a redlined copy of the Asset Purchase Agreement marked against a form asset purchase agreement (which form asset purchase agreement shall be reasonably acceptable to the DIP Lenders in advance of distribution to any Qualified Bidders) to be provided to Qualified Bidders by counsel to the Debtors to show all changes requested by the Qualified Bidder (including the inclusion of the Purchase Price). To the extent a Bid seeks to be an Alternate Plan Sponsor, the Bid shall contain a markup of the Debtors' Proposed Plan.

(e) <u>Designation of Assigned Contracts and Leases</u>. Each Bid must identify any and all Contracts of the Debtors that the Qualified Bidder

wishes to be assumed and assigned to the Qualified Bidder at closing pursuant to a Sale. Each Bid must confirm that the Qualified Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate, after consultation with the Consultation Parties, may be provided by the Debtor).

(f)  Adequate Assurances. Each Bidder must make a representation that it will be able to provide adequate assurance of future performance under any Contracts to be assumed and assigned under section 365 of the Bankruptcy Code, as well as written evidence that the Debtors, in consultation with the Consultation Parties, believes to be sufficient to demonstrate the foregoing, which shall include, but is not limited to, audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, and such other documentation as the Debtors may request. To the extent the Bid seeks to be an Alternate Plan Sponsor, the Bidder must also provide written evidence that the Debtors, in consultation with the Consultation Parties, believes sufficient to satisfy section 1129(a)(11) of the Bankruptcy Code.

(g)  Designation of Assumed Liabilities. Each Bid must identify all liabilities which the Qualified Bidder proposes to assume, which will be valued by the Debtors in their business judgment, in consultation with the Consultation Parties.

(h)  Corporate Authority. Each Bid must include written evidence demonstrating appropriate corporate authorization to consummate the proposed Sale; *provided* that, if the Qualified Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Qualified Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale by the equity holder(s) of such Qualified Bidder.

(i)  Joint Bids. The Debtors will be authorized to approve (in consultation with the Consultation Parties) joint Bids in their reasonable discretion on a case-by-case basis.

(j)  Disclosure of Identity of Qualified Bidder. Each Bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or Reorganized Equity or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements, or understandings concerning a collaborative or joint Bid or any other combination concerning the proposed Bid. Each Bid must include a binding representation by the Qualified Bidder (including all persons comprising such Qualified Bidder, if a collaborative or joint Bid) that it has not engaged in collusion with any other Bidder or other party regarding the sale of the Assets or Reorganized Equity.

(k)  Proof of Financial Ability to Perform. Each Bid must include written evidence that the Debtors may reasonably conclude, in consultation with their advisors and the Consultation Parties, demonstrates that the Qualified Bidder has the necessary financial ability to close the Sale and comply with its obligations thereunder, including all liabilities to be assumed. Such information must include the following: (1) contact names and telephone numbers for verification of financing sources, (2) evidence of the Bidder's internal resources and, if applicable,

proof of unconditional fully executed and effective financing commitments from one or more reputable sources in an aggregate amount equal to the Purchase Price of such Bid, (3) a description of the Bidder's pro forma capital structure, and (4) any other financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such bidder has the ability to close the proposed Sale.

(l)  Regulatory and Third Party Approvals.  Each Bid must set forth each regulatory and third-party approval, if any, required for the Qualified Bidder to consummate the Sale, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals, and the Debtors, in consultation with the Consultation Parties, may consider in evaluating the Bid the timing and likelihood of such approvals, and any actions the Qualified Bidder will need to take to ensure receipt of such approval(s) as promptly as possible. The Bid must contain the affirmative representation of the Qualified Bidder that the Qualified Bidder understands and agrees that the Qualified Bidder will cooperate with the Debtors and the Consultation Parties (at the Qualified Bidder's cost) in negotiations with any such third parties.  In the event that any Qualified Bidder is, or any holder of an ownership interest in a Qualified Bidder is, a "Foreign Person" requiring the approval of the Committee on Foreign Investment in the United States, or if the transfer of any assets (including the transfer of any license to use electromagnetic spectrum) would otherwise be subject to additional scrutiny or reasonably anticipated delays by any regulatory agency or other governmental authority whose consent is necessary for the transfer of Assets, the Qualified Bidder shall bear the costs incurred in connection with the preparation, filing, and prosecution of any submission before any regulatory agency or other governmental authority (including, without limitation, any filing fees and legal fees incurred by Debtors related to such regulatory approval process) and must include additional consideration sufficient to support the continued operations of Debtors during the regulatory approval process.

(m)  Contact Information and Affiliates.  Each Bid must provide the identity and contact information for the Qualified Bidder and full disclosure of any parent companies of the Qualified Bidder.

(n)  Contingencies.  No Bid may be conditioned on obtaining or the sufficiency of financing or any internal approval, on the outcome or review of due diligence, or otherwise subject to contingencies more burdensome, in the Debtors' business judgment, and after consultation with the Consultation Parties, than those set forth in the form asset purchase agreement to be provided to Qualified Bidders by counsel to the Debtors.  All conditions to completion of the Sale must be set forth in the Asset Purchase Agreement.

(o)  Irrevocable. Each Bid must be irrevocable until the Good Faith Deposit has been returned in accordance with the provisions hereof, *provided* that, if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid will continue to remain irrevocable through the Outside Backup Date.

(p)  Compliance with Due Diligence Requests.  The Qualified Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access requested by the

|  | Debtors to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties. |
|  | (q) <u>As-Is, Where-Is</u>. Each Bid must include the following representations and warranties: (a) expressly state that the Qualified Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Assets prior to submitting its Bid; and (b) a statement that the Qualified Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Qualified Bidder's proposed asset purchase agreement ultimately accepted and executed by the Debtors. |
|  | (r) <u>Termination Fees</u>.  No Bid will entitle the Qualified Bidder to any expense reimbursement, break-up fee, or similar type of payment in connection with the Bid. |
|  | (s) <u>Consent to Jurisdiction</u>.  Each Bid will state that the Qualified Bidder consents to the jurisdiction of the Court. |
|  | (t) <u>Bid Deadline</u>.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be actually received on or before 5:00 p.m. (prevailing Eastern Time) on December 12, 2023 (the "**Bid Deadline**") by the Bid Notice Parties.  The Debtors will deliver copies of all Bids received to the Consultation Parties within 24 hours of receipt. |
| **Option to Select Stalking Horse and Bid Protections** | N/A. |
| **Modifications of Bidding Qualifications or Auction Procedures** | The Debtors reserve the right, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best Bid or combination of Bids and which is the next highest or otherwise best Bid or combination of Bids; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, (iii) contrary to the best interests of the Debtors and their estates, or (iv) subject to any financing contingency or otherwise not fully financed; (e) waive terms and conditions set forth herein with respect to all potential Bidders; (f) impose additional terms and conditions with respect to Potential Bidders; (g) with the consent of the DIP Agent and/or DIP Lenders, as applicable, extend the deadlines set forth herein; (h) continue or cancel the Auction or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures and implement additional procedural rules that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, will better promote the goals of the bidding process. |

| | |
|---|---|
| **Highest or Otherwise Best Bid** | The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates. |
| **Closing with Alternative Backup-Bidders** | Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Bid or combination of Bids at the Auction, as determined by the Debtors, in the exercise of their reasonable business judgment, and after consulting with the Consultation Parties, subject to the express consent of the DIP Agent  (subject to the "Consultation Party" section hereof), will be designated as the backup bidder (the "**Backup Bidder**").  The Backup Bidder will be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") open and irrevocable until the date (the "**Outside Backup Date**") that is the earlier of (a) the date that is 30 calendar days after the date of entry of the Sale Order, or (b) the closing date of the Sale with the Successful Bidder.  In no event shall the DIP Agent or the DIP Lenders be required to act as a Backup Bidder.<br><br>Following the Sale Hearing and entry of the Sale Order, if the Successful Bidder fails to consummate an approved Sale, the Backup Bidder will be deemed to be the Successful Bidder, and the Backup Bid the Successful Bid, and the Debtors will be authorized, but not required, without further order of the Court, to consummate the Sale with the Backup Bidder.  In such case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the defaulting Successful Bidder's deposit will be forfeited to the Debtor.  The Debtors, on their behalf and on behalf of their estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder but excluding the DIP Agent, the DIP Lenders or any other party that submits a Qualified Credit Bid) in accordance with the terms of the Bidding Procedures. |
| **Auction** | Auction.  The Auction, if necessary, will take place beginning on **December 14, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 or via remote video, or on such other date and/or at such other location as determined by the Debtors in consultation with the Consultation Parties.  If the date or location of the Auction is changed from that which is described in the notice of auction, the Debtors will file a revised notice at least 24 hours before the Auction indicating such change, and will serve the same on all Qualified Bidders and any creditors that have made a request for such service.  The Auction will be conducted according to the following procedures, which procedures will be subject to modification by the Debtors as the Debtors, in consultation with the Consultation Parties, deem necessary to better promote the goals of the Auction and to comply with their fiduciary obligations.  For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, may adopt any procedures for the Auction that the Debtors believe, in the exercise of their reasonable business judgment, will maximize value, including, but not limited to, conducting separate Auctions for discrete pools of Assets and/or Reorganized Equity. |

## II.    NOTICE PROCEDURES

17.    On or before the date that is 21 calendar days before the Sale Hearing (the "**Mailing Date**"), in accordance with Bankruptcy Rule 2002(a) and (c), the Debtors or their agents will serve the Auction and Sale Notice by first-class mail, postage prepaid, upon the following parties: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Assets during the past twelve (12) months; (b) all entities known to have asserted any interest in or upon any Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested by this Motion; (d) the Internal Revenue Service; (e) proposed counsel to any Committee; (f) the Prepetition Secured Creditors; (g) those parties who have made the appropriate filings requesting notice of all pleadings filed in these Chapter 11 Cases; (h) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (i) the Securities and Exchange Commission; (j) the Office of the United States Attorney for the District of Delaware; (k) the offices of the attorneys general for the states in which the Debtors operate (collectively, (a)-(k), the "**Transaction Notice Parties**"); and (l) all the Debtors' other known creditors.

18.    The Auction and Sale Notice will indicate that copies of this Motion and the Bidding Procedures can be obtained on the website maintained by the Debtors' claims and noticing agent, Stretto, at https://cases.stretto.com/ironnet.  The Auction and Sale Notice will also indicate the deadline for objecting to the Sale and to the Successful Bidder, and the date and time of the Sale Hearing.

19.    The Debtors also propose, pursuant to Bankruptcy Rules 2002 and 6004, to publish a notice of the Sale, in substance substantially similar to the Auction and Sale Notice, in in the national edition of *The New York Times*, *The Wall Street Journal*, *USA Today* or another

30892728.7

publication with similar national circulation on the Mailing Date or as soon as practicable thereafter.  The Debtors request that such Publication Notice be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

### III.        SALE FREE AND CLEAR OF INTERESTS

20.    Any Sale will be free and clear of all Interests, with such Interests to attach to the proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.  As used herein, Interests include all of the following, in each case, to the extent against or with respect to the Debtors, or in, on, or against, or with respect to any of the Assets:  liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (a) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date), rights of use or possession, subleases, leases, conditional sale arrangements, deferred purchase price obligations, or any similar rights; (b) all claims, including,

30892728.7

15

without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (c) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (d) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the purchaser's interest in the Assets, or any similar rights; (e) any rights under labor or employment agreements; (f) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "**ERISA**")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (g) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended,

(vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (xii) the WARN Act (29 U.S.C. §§ 2101, *et seq.*) or any state or other laws of similar effect; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets or business of the Debtors before the closing of a Sale; (j) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not assumed; (k) any other excluded liabilities under the Asset Purchase Agreement; and (l) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

## BASIS FOR RELIEF REQUESTED

## I.    APPROVAL OF SALE IS APPROPRIATE UNDER SECTION 363 OR 1123 OF BANKRUPTCY CODE

21.    Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  A debtor must demonstrate a sound business

justification for the sale or use of assets outside the ordinary course of business. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

22.     Once a court determines that a valid business justification exists for a sale outside of the ordinary course of business, courts must determine whether:  (a) adequate and reasonable notice of the sale was given to interested parties; (b) the sale will produce a fair and reasonable price for the property; and (c) the parties have acted in good faith.   *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).  As described below, the proposed Sale, should it be consummated, meets each of these requirements.[10]

## A.    The Sale Represents a Sound Exercise of Debtor's Business Judgment

23.     Here, a strong business justification exists for the relief requested in this Motion.  A competitive bidding process for a Sale of the Assets and/or Reorganized Equity consistent with the Bidding Procedures will ensure that the Debtors obtain the best possible value for their businesses, to the benefit of the Debtors' estates. The expeditious process contemplated in the Bidding Procedures is a reasonable exercise of the Debtors' business judgment and is in the best interests of all of the Debtors' stakeholders.

## B.    The Bidding Procedures Are Fair and Designed to Maximize Value

24.     The Debtors believe that the Bidding Procedures satisfy each of the remaining requirements of section 363 of the Bankruptcy Code by (a) providing ample notice of each element of the proposed Sale process, (b) facilitating a value-maximizing transaction, and

---

[10]   As contemplated in the Bidding Procedures, however, if a party submits a Successful Bid to be effectuated under the Plan, such a Sale will be effectuated pursuant to section 1123 of the Bankruptcy Code.

(c) ensuring an unbiased and good faith Sale process.  The detailed Bidding Procedures outlined above and in Exhibit 1 to the Bidding Procedures Order provide notice designed to fully inform all parties with a stake in the Sale process regarding the portions of the Sale process most relevant to their interests.  For example, the Bidding Procedures outline all material aspects of the potential purchaser notification, Bid qualification, due diligence, Bid submission, Bid selection, and Auction process, including the timing for each.  Thus, the Bidding Procedures provide assurance to each entity potentially interested in purchasing the Assets or components thereof that their respective rights will be protected and the Sale process will be fair and reasonable.  At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select, in their reasonable business judgment, the highest and best offer.

## II.    THE SALE SATISFIES THE REQUIREMENTS OF SECTION 363(f) OF BANKRUPTCY CODE FOR A SALE FREE AND CLEAR OF INTERESTS

25.    The Sale also meets the requirements to be a sale free and clear of Interests.  Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26.    A sale that meets the requirements for a sale free and clear of Interests pursuant to section 363(f) of the Bankruptcy Code also bars claimants from asserting successor liability against the successful purchaser.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re NE Opco, Inc.*, 513 B.R. 871, 876 (Bankr. D. Del. 2014); *In re Ormet Corp.*, No. 13-10334 (MFW), 2014 WL 3542133, at *3 (Bankr.  D. Del. July 17, 2014); *Amphenol Corp. v. Shandler (In re Insilco Techs, Inc.)*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

27.    With respect to any party asserting an Interest in the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code.  In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested.  Such lienholders that do not object to the Sale should be deemed to have consented.  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold." (internal citations omitted)); *Hargrave v. Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. 343, 345 (E.D. Penn. 1988) (same).

28.     Consistent with the foregoing, the Bidding Procedures Order provides that the absence of a timely objection to the Sale in accordance therewith will be "consent" to such Sale within the meaning of section 363(f)(2) of the Bankruptcy Code.  The Debtors reserve the right to assert the application of any other prong of section 363(f), should any objections be lodged.

### III.     THE SUCCESSFUL BIDDER SHOULD BE AFFORDED THE PROTECTIONS OF SECTION 363(M) OF BANKRUPTCY CODE

29.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 8 (1st Cir. 1993).

30.     The Debtors will present facts at the Sale Hearing to demonstrate that the Sale was negotiated at arm's length, with all parties represented by their own counsel. Accordingly, the Debtors request that the Sale Order include a provision concluding that the Successful Bidder is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtors believe that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors and the closing of the same will occur promptly.

### BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED

31.     The Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d).  As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to preserve and maximize the value of their estates.

Accordingly, the Debtors submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is appropriate.

## **RESERVATION OF RIGHTS**

32.    Nothing contained herein is or should be construed as:  (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' property; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the Proposed Orders once entered.  Nothing contained in the Proposed Orders will be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## **NOTICE**

33.    Notice of this Motion will be provided to:  (i) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the DIP Lenders; (d) counsel to the Prepetition Secured Creditors; (e) counsel to Korr; (f) counsel to 3i; (g) all parties who have expressed a written interest in some or all of the Assets; (h) all known holders of liens, encumbrances, and other claims secured by the Assets; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors believe that no further notice is required.

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:    October 24, 2023
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Elizabeth S. Justison*

Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Timothy R. Powell (No. 6894)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
        kenos@ycst.com
        ejustison@ycst.com
        tpowell@ycst.com
        kmcelroy@ycst.com

*Proposed Counsel for the Debtors and Debtors in Possession*