## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | Case No. 23-11710 (BLS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date:** **November 14, 2023 at 1:00 p.m. (ET)** |
|  | **Objection Deadline:** **November 7, 2023 at 4:00 p.m. (ET)** |

**APPLICATION OF DEBTORS TO EMPLOY AND RETAIN
ARNOLD & PORTER KAYE SCHOLER LLP AS SPECIAL COUNSEL TO THE
DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby apply (this "**Application**") and respectfully state as follows:

### RELIEF REQUESTED

1.     By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") authorizing the employment and retention of Arnold & Porter Kaye Scholer LLP ("**A&P**" or the "**Firm**") as their special counsel related to certain transactional, securities, and financing matters, effective as of the Petition Date (as defined herein). In support of this Application, the Debtors submit (a) the declaration of Brian Lohan, a partner at A&P (the "**Lohan Declaration**"), a copy of which is attached hereto as **Exhibit B** and incorporated herein, and (b) the declaration of Cameron Pforr in support of the

---

[1]    The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

Application, a copy of which is attached hereto as **Exhibit C** (the "**Pforr Declaration**") and incorporated herein.

## JURISDICTION

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

3.      The statutory and legal predicates for the relief requested herein are section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014-1.

## BACKGROUND

4.      On October 12, 2023 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

30901768.

5.     Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of Cameron Pforr, President and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 4] (the "**First Day Declaration**").[2]

## QUALIFICATIONS OF A&P

6.     Since June 2023, A&P has provided a wide variety of services to the Debtors related to corporate and securities matters, and since the end of August 2023, A&P has assisted with certain transactional matters, including the potential for rescue financing in an effort to avoid a liquidation in chapter 7 (the "**A&P Services**").   As a result of its prepetition representation of the Debtors, A&P has acquired familiarity with the Debtors generally having served as primary corporate counsel to the Debtors' board of directors (the "**Board**") and management, as well as knowledge of the facts and circumstances specific to the ongoing A&P Services. The Debtors submit that the A&P Services are necessary for and beneficial to the Debtors' estates and these chapter 11 cases.

7.     More generally, A&P is a global law firm with nearly 1,000 lawyers operating in fifteen (15) offices around the world. A&P has substantial experience advising and representing companies in practice areas ranging from antitrust, regulatory, IP, product liability, securities regulation (including SEC rules, securities law, and corporate matters), mergers and acquisitions, transactions, legislative and public policy, and commercial litigation.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

30901768.1

8.      Thus, A&P is well qualified and uniquely able to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code, and A&P's retention would be in the best interest of the Debtors' estates, creditors, and other parties in interest.

**SERVICES TO BE PROVIDED**

9.      The Debtors have determined that it is necessary and in the best interest of the estates that A&P provide the following services:  (a) securities and certain corporate, SEC, regulatory, antitrust, litigation, and transactional matters; and (b) certain matters related to post-petition financing.  Subject to further order of the Court, the Debtors request the employment and retention of A&P to render the A&P Services, which shall include, but are not limited to:

i.      Representing and advising the Debtors with respect to SEC compliance and certain general corporate counseling matters;

ii.     Counseling with respect to financing issues, including the Notice of Default issued by 3i; and

iii.    litigation matters related to the Securities Class Action (as set forth below and in the Lohan Declaration).

10.     A&P has stated its desire and willingness to act in these matters and render the necessary professional services for the Debtors.  Therefore, the Debtors seek to retain A&P pursuant to this Application.

**A&P DISCLOSURES**

11.     To the best of the Debtors' knowledge, information, and belief, the partners of, counsel to, and associates of A&P do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest with respect to the A&P Services.  In addition, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Lohan Declaration, A&P neither holds nor represents any interest that is materially adverse

to the Debtors' estates in connection with any of the A&P Services for which A&P will be employed.

12.     Based upon the information set forth in the Lohan Declaration, A&P is therefore qualified to serve as special counsel to the Debtors.  *See Mee's Pierson Inc. v. Strategic Telecom, Inc.*, 202 B.R. 845, 847 (Bankr. D. Del. 1996) (recognizing that pursuant to section 327(e) of the Bankruptcy Code, an attorney who holds or represents an adverse interest may act as special counsel to debtor under the statutory exception to disinterestedness rule only if the attorney has already represented debtor, if the attorney is employed for a special specific purpose approved by bankruptcy court, if the attorney's appointment is in best interests of estate, and if the attorney has no conflict of interest concerning the matter at hand).[3]

13.     The Debtors have been informed that A&P will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise. If any new facts or relationships are discovered, A&P will supplement the Lohan Declaration with such facts or circumstances that require additional disclosure.

---

[3]     *Compare with* section 327(a) of the Bankruptcy Code, which requires both that an attorney not "hold or represent an interest adverse to the estate," and is a "disinterested person[]." 11 U.S.C. § 327(a).  "The term 'disinterested person' means a person that (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

## PROFESSIONAL RATES AND COMPENSATION

14.     As set forth in the Lohan Declaration, A&P's hourly rates for matters related

to the A&P Services are expected to be within the following ranges:

| Position | Range of Hourly Rates |
| --- | --- |
| Partners | $1,040 to $1,800 an hour |
| Counsel | $1,045 to $1,945 an hour |
| Associates | $640 to $1,075 an hour |
| Staff Attorney & Specialists | $170 to $850 an hour |
| Paraprofessionals | $150 to $765 an hour |

15.     The Debtors understand that all of the aforementioned hourly billing rates
reflect a previously agreed-upon voluntary ten percent (10%) discount from two (2)-year trailing
rates. Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly
rates are subject to periodic adjustments to reflect economic and other conditions (which
adjustments will be reflected in the first A&P fee application following such adjustments) and are
consistent with the rates charged elsewhere.  It is the Debtors' understanding that notice of rate
changes will be provided to the, the Debtors, the Office of the United States Trustee for the District
of Delaware (the "**U.S. Trustee**"), and any committee (if one is appointed).  In addition to the
periodic adjustments described above, and as set forth in the Lohan Declaration, A&P's hourly
rates and financial terms for the services performed by certain professionals and paraprofessionals
prior to the Petition Date are different from the hourly rates and financial terms of the postpetition
engagement proposed herein.

16.     In accordance with their existing retention arrangement with A&P, it is the
Debtors' understanding that certain of the disbursements and expenses incurred in the rendering
of the A&P Services will be included and covered by the aforementioned hourly rates and will not
be paid separately.  Those disbursements and expenses that are to be charged separately to the

Debtors include, among other things, photocopying by outside vendors at cost, fees related to filings and motion practice, and limited travel expenses.

17.     Per the terms of the Engagement Letter, on August 10, 2023, A&P received $20,000, which, as stated in the Engagement Letter, constituted the initial retainer (the "**August Retainer**").  On October 10, 2023, A&P received $125,000 as an additional retainer to cover both the prepetition fees and expenses incurred two days prior to filing and to be held and applied against postpetition fees and expenses (the "**October Retainer**," and together with the August Retainer, the "**Retainer**").

18.     As set forth in the Lohan Declaration, A&P received the August Retainer and October Retainer during the ninety (90) days prior to the Petition Date.  $27,286.06 of the October Retainer was applied to cover prepetition fees and expenses incurred from October 10, 2023 through October 12, 2023.  The remaining $97,713.94 is being held in A&P's accounts and will be applied against postpetition fees and expenses approved by the Court.  The August Retainer was fully applied.  As of the Petition Date, the outstanding amount owed to A&P was equal to $132,283.38.  Per the Lohan Declaration, it is the Debtors' understanding that A&P will be waiving this prepetition amount.

19.     The Debtors understand and have agreed that A&P hereafter will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further orders of this Court for all professional services performed and expenses incurred after the Petition Date.

20.     Subject to the provisions of the foregoing statutes, rules and orders, the Debtors propose to compensate A&P for services rendered at the hourly rates in effect from time

to time, as set forth in the Lohan Declaration, and to reimburse A&P according to its customary reimbursement policies.  The Debtors respectfully submit that A&P's rates and policies set forth herein and stated in the Lohan Declaration are reasonable, particularly given the nature of the A&P Services and their potential impact on these chapter 11 cases.

21.    To the best of the Debtors' knowledge, neither A&P nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with these chapter 11 cases, other than as permitted by the Bankruptcy Code.  A&P has agreed not to share compensation received in connection with these chapter 11 cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among A&P's partners.

## NO DUPLICATION OF SERVICES

22.    The services of A&P will complement, and not duplicate, the services rendered by any other professional retained in these chapter 11 cases.  A&P understands that the Debtors have retained and may retain additional professionals during the term of its engagement and agrees to work cooperatively with such processionals, including Young Conaway Stargatt & Taylor, LLP ("**YCST**"), as the Debtors proposed bankruptcy co-counsel under section 327(a) of the Bankruptcy Code, to avoid any duplication of services and unnecessary fees.

## NO ADVERSE INTEREST

23.    To the best of the Debtors' knowledge and as disclosed herein and in the Lohan Declaration:  (a) A&P, as required by section 327(e) of the Bankruptcy Code, does not hold or represent an interest adverse to the Debtors' estates with respect to the matters on which A&P is proposed to be employed; and (b) A&P's partners and associates have no connection to the Debtors, their creditors or their related parties except as may be disclosed in the Lohan Declaration.

30901768.1

24.     A&P will conduct an ongoing review of its files to ensure that no conflicts or disqualifying circumstances exist or arise.  Pursuant to Local Rule 2014-1(a), to the extent that A&P learns of any additional material information relating to its employment (such as potential or actual conflicts of interest), A&P will file and serve a supplemental declaration with the Court setting forth such additional information.

**BASIS FOR RELIEF REQUESTED**

25.     Under section 327(e) of the Bankruptcy Code, a debtor in possession with the bankruptcy court's approval, "may employ for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).

26.     Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

27.     The Debtors respectfully submit that retaining and employing A&P pursuant to the terms of this Application and the Lohan Declaration is in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases.  As set forth in the Lohan Declaration, A&P has provided the A&P Services to the Debtors since June 2023.  A&P has, in-

depth knowledge of the Debtors' business, securities filings and the claims and issues being pursued against the Debtors. The A&P Services will not overlap, but rather will complement, the services to be provided by the Debtors' general bankruptcy counsel, YCST, and other counsel retained in these chapter 11 cases. A&P has also represented to the Debtors that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter for which it will be employed.

28.     Moreover, the Debtors believe it is appropriate that A&P's retention under section 327(e) of the Bankruptcy Code be approved, effective as of the Petition Date, because it would be in the best interests of the Debtors' estates, creditors, and other parties in interest to retain A&P pursuant to this Application.

## BANKRUPTCY RULE 5002

29.     As set forth in the Lohan Declaration, no partner, associate, paraprofessional or other employee of A&P is a relative of, or has been so connected with, any United States Bankruptcy Judge for the District of Delaware, any of the District Court Judges for the District of Delaware who handle bankruptcy cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, the attorneys for the U.S. Trustee assigned to these chapter 11 cases or any other employee of the U.S. Trustee. Accordingly, the appointment of A&P is not prohibited by Bankruptcy Rule 5002.

## NOTICE

30.     Notice of this Application has been provided to:   (a) the U.S. Trustee; (b) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the DIP Facility Lenders; (d) counsel to the Prepetition Secured Creditors; (e) counsel to Korr; (f) counsel to 3i; and (g) all parties that have filed a notice of appearance and request for service

30901768.1

of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief

requested herein and such other and further relief as is just and proper.

Dated: October 24, 2023

*/s/ Cameron Pforr*
Cameron Pforr
President and Chief Financial Officer
IronNet, Inc., *et al.*