**EXHIBIT A**

**Proposed Solicitation Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| IRONNET, INC., *et al.*,[1] | ) Case No. 23-11710 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Ref. Docket No. ___ |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) ESTABLISHING SOLICITATION AND TABULATION PROCEDURES; (III) APPROVING THE FORM OF BALLOT AND SOLICITATION MATERIALS; (IV) ESTABLISHING THE VOTING RECORD DATE; (V) FIXING THE DATE, TIME, AND PLACE FOR THE COMBINED HEARING AND THE DEADLINE FOR FILING OBJECTIONS THERETO; AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of an order: (i) approving the Disclosure Statement on an interim basis for solicitation purposes only; (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan; (iii) approving the form of ballot and solicitation materials; (iv) establishing a voting record date; (v) fixing the date, time, and place for the Combined Hearing and establishing the deadline for filing objections related thereto; and (vi) granting related relief; and after due deliberation and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AS FOLLOWS:**

A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

---

[1]    The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474). The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Plan, as applicable.

B.       Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.       This Court may, consistent with Article III of the United States Constitution, issue a final order in connection with the Motion.

D.       Venue of the proceeding and the Motion in this District is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.       The relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

F.       The notice of the Motion was served as set forth in the Motion, and such notice constitutes good and sufficient notice to all interested parties and complies with Bankruptcy Rules 2002 and 3017, and no other or further notice need be provided.

G.       The forms of ballots for the Voting Classes attached hereto as **<u>Exhibit 1A</u>** through **<u>Exhibit 1D</u>** (the "**Ballot**s"):  (i) are consistent with Official Form No. 314; (ii) adequately address the particular needs of these chapter 11 cases; (iii) are appropriate for the Voting Classes; and (iv) comply with Bankruptcy Rule 3017(d).

H.       The Ballots need not be provided to Holders of Claims or Interests in the Non-Voting Classes, as such Non-Voting Classes are either (i) unimpaired and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code or (ii) impaired but will neither retain nor receive any property under the Plan and, thus, are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code, as set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest |
|:---:|---|---|
| 1 | Other Priority Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 2 | Other Secured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |

30943011.5

| Class | Claim/Interest | Treatment of Claim/Interest |
|-------|----------------|------------------------------|
| 3 | IronNet Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 4 | IronNet General Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 5 | OpCo Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 6 | OpCo General Unsecured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 7 | OpCo Other Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 8 | Intercompany Claims | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 9 | Intercompany Interests | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 10 | Equity Interests in IronNet | Impaired, and <u>not</u> entitled to vote on account of such Claims (deemed to reject). |

I.     The period during which the Debtors may solicit votes to accept or reject the Plan, as established by this Order, provides sufficient time for the Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan and submit a Ballot in a timely fashion, and the solicitation provided by this Order is consistent with section 1126 of the Bankruptcy Code.

J.     The Tabulation Procedures for the solicitation and tabulation of votes to accept or reject the Plan, as approved herein, provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

K.     The notices attached to this Order (collectively, the "**Notices**") contain sufficient information and are appropriate under the circumstances.

L.     The Opt-Out Release Form is appropriate under the circumstances, satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules, and are approved.

M.      The contents of the Solicitation Package and the procedures for providing notice of the Combined Hearing and the other matters set forth in the Combined Hearing Notice, under the circumstances, constitute sufficient notice to all interested parties in accordance with Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The relief requested in the Motion is granted as set forth herein.

**CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT**

2.      The Disclosure Statement is approved on an interim basis as containing adequate information for solicitation purposes under sections 105 and 1125 of the Bankruptcy Code, Bankruptcy Rule 3017, and Local Rule 3017-2.

**APPROVAL OF THE CONFIRMATION TIMELINE**

3.      This Court shall conduct the Combined Hearing for (i) final approval of the Disclosure Statement as containing adequate information and (ii) confirmation of the Plan.  The Combined Hearing is hereby scheduled for **January 18, 2024 at 10:00 a.m. (prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time without further notice other than by (a) announcing any adjourned date at the Combined Hearing (or any continued hearing) or (b) filing a notice on the docket of these chapter 11 cases.

4.      The following dates and deadlines, are hereby approved:

| Event | Proposed Date |
|---|---|
| Voting Record Date | December 4, 2023 |
| Date by Which Solicitation Will be Mailed | Within 3 business days after entry of this Order |
| Deadline to File Rule 3018 Motions | December 29, 2023 at 5:00 p.m. (Prevailing Eastern Time) |
| Deadline to File Plan Supplement | January 4, 2024 |
| Voting Deadline | January 11, 2024 at 5:00 p.m. (Prevailing Eastern Time) |

30943011.5

| Event | Proposed Date |
|---|---|
| Deadline to Object to Confirmation and Final Approval of Adequacy of Disclosures | January 11, 2024 at 5:00 p.m. (Prevailing Eastern Time) |
| Deadline to file brief, replies, and declarations in support of the Plan and the proposed Confirmation Order | January 16, 2024 at noon (Prevailing Eastern Time) (or prior to noon two business days prior to any adjourned Combined Hearing) |
| Combined Hearing | January 18, 2024 at 10:00 a.m. (Prevailing Eastern Time) |

## <u>APPROVAL OF THE SOLICITATION PROCEDURES</u>

5.      The Ballots, substantially in the form attached hereto as **<u>Exhibit 1A</u>** through **<u>Exhibit 1D</u>**, are approved.

6.      The Notices, in substantially the form attached hereto, are approved.

7.      Pursuant to Bankruptcy Rule 3017(d), **<u>December 4, 2023 at 4:00 p.m. (prevailing Eastern Time)</u>** shall be the record date for purposes of determining which Holders of Claims are entitled to receive Solicitation Packages and vote on the Plan (the "**Record Date**").

8.      With respect to any transferred Claim, the transferee shall only be entitled to receive and cast a Ballot on account of such transferred Claim if:  (i) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date (including, without limitation, the passage of any applicable objection period) or (ii) the transferee files, no later than the Voting Record Date, (a) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (b) a sworn statement of the transferor supporting the validity of the transfer.

9.      On or prior to the date that is three (3) business days following entry of this Order (the "**Service Date**"), the Voting Agent shall mail the Solicitation Package to Holders of Claims in the Voting Classes containing copies of:  (i) the Combined Hearing Notice; (ii) either a paper copy or a copy in "pdf" format on CD-ROM or flash drive of the Disclosure Statement and the Plan; (iii) the Ballot; and (iv) a pre-paid, pre-addressed return envelope.  The Debtors shall

be excused from distributing Solicitation Package to those persons or entities listed at addresses for which previous mailings have been returned as undeliverable, unless the Debtors receive written notice of accurate addresses for such persons or entities prior to the Voting Record Date. The Debtors and Voting Agent are also not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including undeliverable Ballots) or Combined Hearing Notices.

10.     The Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Claims and Interests in the Non-Voting Classes.  Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to the Holders of Claims and Interests in the Non-Voting Classes, Holders of unclassified Claims, and Holders of Claims that are subject to a pending objection by the Debtors, a notice, substantially in the form of **Exhibit 3** attached hereto (the "**Notice of Non-Voting Status**").

11.     The Debtors shall not be required to deliver Ballots or Solicitation Packages to counterparties to the Debtors' Executory Contracts and Unexpired Leases who do not have scheduled Claims and have not filed Proofs of Claim.  Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to such counterparties to the Debtors' Executory Contracts and Unexpired Leases a notice, substantially in the form of **Exhibit 4** attached hereto.

12.     Nominees are required to forward a Notice of Non-Voting Status and a Combined Hearing Notice (together, the "**Beneficial Holder Notices**") to Beneficial Holders of Equity Interests in Class 10 within five (5) business days of receiving the Beneficial Holder Notices.  To the extent the Nominees incur out-of-pocket expenses in connection with distribution

30943011.5

of the Beneficial Holder Notices, the Debtors are authorized, but not directed, to reimburse such Nominees for their reasonable and customary expenses incurred in this regard.

13.    The Debtors are authorized, but not directed, to publish the Publication Notice, substantially in the form attached hereto as **Exhibit 5**, in *USA Today National Edition* or other similar national publication at least twenty-eight (28) days prior to the Combined Hearing.

14.    To be counted as a vote to accept or reject the Plan, a Ballot must be properly executed, completed, and delivered to the Voting Agent in accordance with the instructions on the Ballot so that it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on January 11, 2024** (the "**Voting Deadline**").

15.    The Debtors propose that the following procedures in the subsequent paragraph be utilized in tabulating the votes to accept or reject the Plan (the "**Tabulation Procedures**").  Solely for purposes of voting to accept or reject the Plan, and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the rights of the Debtors and their estates in any other context, the Debtors propose that each Claim within the Voting Classes vote in an amount determined by the following procedures:

- If a Claim is deemed allowed under the Plan, an order of this Court, or a stipulated agreement between the parties, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth therein;

- If a Claim for which a proof of claim has been timely filed for unknown or undetermined amounts, or is wholly unliquidated or wholly contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Voting Agent), and such Claim has not been allowed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

- If a Claim for which a proof of claim has been timely filed is partially unliquidated or partially contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Voting Agent), such Claim is temporarily allowed in the amount that is liquidated and non-contingent for voting purposes only, and not for purposes of allowance or distribution;

- If a Claim for which a proof of claim was timely filed and is liquidated and non-contingent, or was listed in the Debtors' schedules of assets and liabilities (the "**Schedules**") in an amount that is liquidated, non-contingent, and undisputed, such Claim is allowed for voting purposes in the amount set forth on the proof of claim, or if no proof of claim was timely filed, the Debtors' filed Schedules;

- If a Claim has been estimated or otherwise allowed for voting purposes by order of this Court, such Claim is temporarily allowed in the amount so estimated or allowed by this Court for voting purposes only, and not for purposes of allowance or distribution;

- If a Claim is listed on the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by this Court, or (ii) deemed timely filed by an order of this Court prior to the Voting Deadline, such Claim shall be disallowed for voting purposes; *provided*, *however*, if the applicable bar date has not yet passed, such Claim shall be entitled to vote at $1.00;

- Proofs of claim filed for $0.00 are not entitled to vote;

- If the Debtors or other party in interest have served an objection or request for estimation as to a Claim at least ten (10) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only, and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by this Court before the Voting Deadline;

- For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one (1) Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

- Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one (1) Solicitation Package and one (1) Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

- If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending proof of claim shall be entitled to vote in a manner consistent with these Tabulation Procedures, and the earlier filed proof of claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended proof of claim.  Except as otherwise ordered by this Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these Tabulation Procedures.

30943011.5

**Voting Rules**

- Except as otherwise ordered by this Court, any Ballot received after the Voting Deadline will not be counted absent the consent of the Debtors, in their discretion;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

- Any Ballot cast by a person or entity that does not hold a Claim in the Voting Classes as of the Voting Record Date will not be counted;

- Any unsigned Ballot will not be counted, provided that Ballots validly submitted through the E-Balloting Portal will be deemed signed;

- Except in the Debtors' discretion, any Ballot transmitted to the Voting Agent by facsimile or other electronic means (other than through the E-Balloting Portal) will not be counted;

- Any Ballot that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted;

- Whenever a claimant casts more than one (1) Ballot voting the same Claim prior to the Voting Deadline, only the latest-dated valid Ballot timely received will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots;

- If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class;

- If a claimant casts simultaneous duplicative Ballots that are voted inconsistently, such Ballots will not be counted;

- Subject to the other Tabulation Procedures, each claimant will be deemed to have voted the full amount of its Claim as set forth on the Ballot;

- Claimants may not split their vote within a Class; thus, each claimant will be required to vote all of its Claims within a Class either to accept or reject the Plan, and any votes that are split will not be counted; and

- Subject to any contrary order of this Court, the Debtors further reserve the right to waive any defects, irregularities, or conditions of delivery as to any particular Ballot.

16.     Upon completion of the balloting, the Voting Agent shall certify the amount

and number of allowed claims of the Voting Classes accepting or rejecting the Plan, including all

30943011.5

9

votes not counted and the reason for not counting such votes. The Debtors shall cause such certification to be filed with this Court prior to the Combined Hearing.

17.     If any Holder of a Claim seeks to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Procedures, such Holder must file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing its claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "**Rule 3018 Motion**") no later than __**December 29, 2023 at 4:00 p.m. (prevailing Eastern Time)**__ and serve the Rule 3018 Motion on the Debtors. The Debtors (and, with respect to filing a response, any other party in interest) shall then (i) have until January 9, 2024 to file and serve any responses to such Rule 3018 Motions, and (ii) coordinate with this Court to adjudicate and resolve all pending Rule 3018 Motions prior to the Combined Hearing. Any Ballot submitted by a Holder of a Claim that files a Rule 3018 Motion shall be counted solely in accordance with the Tabulation Procedures and the other applicable provisions of this Order unless and until the underlying claim or interest is temporarily allowed by this Court for voting purposes in a different amount, after notice and a hearing.

18.     Objections to confirmation of the Plan or final approval of the adequacy of the disclosures contained in the Disclosure Statement, if any, must (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) comply with the Bankruptcy Rules and the Local Rules; and (iv) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, with a copy served upon the following: (a) counsel to the Debtors (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and (ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan

30943011.5

(brian.lohan@arnoldporter.com); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, Jr. (Timothy.Fox@usdoj.gov); and (c) counsel to the DIP Lenders, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Raphael M. Russo (rrusso@paulweiss.com), Sean A. Mitchell (smitchell@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com), and Grace Hotz (ghotz@paulweiss.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com) and Joshua B. Brooks (brooks@lrclaw.com) so that they are received no later than **4:00 p.m. (prevailing Eastern Time) on January 11, 2024**.

19.     The Debtors shall, if they deem necessary in their discretion, and any other party in interest may, file a reply to any such objections or brief in support of confirmation of the Plan, or final approval of the Disclosure Statement, by no later than **noon (prevailing Eastern Time) on January 16, 2024** (or prior to noon (prevailing Eastern Time) two (2) business days prior to the date of any adjourned Combined Hearing).

20.     The Debtors are authorized to make non-substantive and ministerial changes to the Plan, Disclosure Statement, Combined Hearing Notice, Opt-Out Release Form, Notice of Non-Voting Status, Solicitation Package, Ballots, Publication Notice, and related documents without further approval of this Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes to any materials included in the Solicitation Package prior to their distribution.

21.     The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of, and the relief granted in, this Order.

22.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

30943011.5

23.     This Court shall retain jurisdiction to hear and determined all matters arising from or related to the interpretation, implementation, and enforcement of this Order.

**EXHIBIT 1-A**

**Class 3 (IronNet Secured Note Claims) Ballot**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | Case No. 23-11710 (BLS) |
| Debtors. | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 3: IRONNET SECURED NOTE CLAIMS**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 11, 2024 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**") for IronNet, Inc. ("**IronNet**") and certain of its affiliates (such affiliates, together with IronNet, the "**Debtors**").[2]

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 4, 2023 (the "**Voting Record Date**"), a holder (a "**Holder**") of a IronNet Secured Note Claim against the Debtors.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which was included in the package (the "**Solicitation Package**") you are receiving with this Ballot.  The Disclosure Statement provides information to assist you in

---

[1] The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2] Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Stretto, Inc. (the "**Voting Agent**") at no charge by: (i) visiting the Voting Agent's website at https://cases.stretto.com/ironnet, (ii) calling (949) 749-7469 (international) or (833) 824-1818 (domestic, toll free), or (iii) sending an electronic message to teamironnet@stretto.com with "IronNet" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at http://www.deb.uscourts.gov. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On October 12, 2023, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

## **IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 3**

Claims in Class 3 consist of IronNet Secured Note Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, each Holder of an Allowed IronNet Secured Note Claim shall receive, in full and final satisfaction of its Allowed IronNet Secured Note Claim:

a) In the event of a Restructuring, its Pro Rata Share of the New Common Equity in Reorganized IronNet; or

b) In the event of a Sale Transaction, except as otherwise provided in and giving effect to any applicable Sale Order, its Pro Rata Share of (1) Cash held by the Debtors immediately following consummation less, (2) without duplication, (a) the Cash to be distributed to Holders of Allowed DIP Facility Claims, Allowed General Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims as provided herein, (b) the amount required to fund the Professional Fee Escrow Account, and (c) the Wind-Down Budget.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Principal Amount of Claim**.  The undersigned hereby certifies that as of the
Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of
a IronNet Secured Note Claim in the aggregate unpaid **principal** amount inserted into the box
below, without regard to any accrued but unpaid interest.

$

**Item 2. Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to
your IronNet Secured Note Claim below.  Any Ballot not marked either to accept or reject the
Plan, or marked both to accept and to reject the Plan, shall not be counted in determining
acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the Third-Party
Release, injunction, and exculpation provisions set forth in Articles IX.C, D, and E of
the Plan.**

**If you vote to reject the Plan or do not vote to accept or reject the Plan and do not
affirmatively opt out of the Third-Party Release by checking the box in Item 3 below,
you will be deemed to have granted the Third-Party Release set forth in Article IX.C of
the Plan.**

**Please also be advised that the Debtor Release contained in Article IX.B of the Plan will
be included in the Confirmation Order and that it is separate from and independent of
the Third-Party Release.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation provisions in Articles IX.C, D, and E of the
Plan, respectively.**

---

**Vote of Holder of IronNet Secured Note Claim on the Plan**.  The undersigned Holder
of a IronNet Secured Note Claim votes to (check one box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election.** If you voted to reject the Plan in Item 2 above or did not vote to accept or reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the release contained in Article IX.C of the Plan. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without this box checked, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐　　　The undersigned elects **<u>not</u>** to grant the releases contained in Article IX.C of the Plan.

**Item 4.** Acknowledgments.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the IronNet Secured Note Claim described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other IronNet Secured Note Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (iv) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR
HAND DELIVERY TO:**

**IronNet, Inc. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to
teamironnet@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**Submit your Ballot via the Voting Agent's online portal at
https://cases.stretto.com/ironnet/.  Click on the "Submit E-Ballot" section of the website
and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Unique E-Ballot Pin:_____**

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission.  Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of IronNet Secured Note Claims who cast a Ballot using the Voting Agent's online
portal should NOT also submit a paper Ballot.**

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS BALLOT **ON OR
BEFORE JANUARY 11, 2024**, **AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AND IF
THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE
DISCRETION OF THE DEBTORS.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, or does not contain an original signature will not be counted.  You may return the Ballot by either of the following two methods:

    **Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted as a vote on the Plan, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope via first class mail, or via overnight courier or hand delivery, to the following address:

> **IronNet, Inc. Ballot Processing**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

    **Use of Online Ballot Portal.**  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.stretto.com/ironnet.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

    **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.      The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; and/or (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

3.      You must vote all your IronNet Secured Note Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different IronNet Secured Note Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly

executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you elect <u>not</u> to grant the releases contained in Article IX.C of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release set forth in Article IX.C of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

5.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

6.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or opt-out of the Third-Party Release.

7.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede and revoke any prior Ballot, *provided* that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

8.    If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class.

9.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

10.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

30943011.5

13.    PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE
       ENVELOPE PROVIDED OR SUBMIT YOUR E-BALLOT VIA THE ONLINE
       PORTAL.

14.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR
       BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR
       THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (949) 749-
       7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY
       SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN
       THE SUBJECT LINE.    PLEASE DO NOT DIRECT ANY INQUIRIES TO THE
       BANKRUPTCY COURT.

15.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE
       LEGAL ADVICE.

## Exhibit 1

*Releases, Discharges, Injunctions, and Exculpations*

**If you are entitled to vote on the Plan and you submit a Ballot and do not affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, you shall be deemed to have granted the release provisions set forth in Article IX.C of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

## ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

"**Exculpated Party**" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-

bankruptcy law; *provided, however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

**B.**    *Release by the Debtors*

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule

or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this **Article IX.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

C.      *Third-Party Release*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "**Third-Party Release**") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not

operate to waive or release: **(i)** any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or **(ii)** the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.

D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: **(i)** any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or **(ii)** the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and

not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

**EXHIBIT 1-B**

**Class 5 (IronNet General Unsecured Claims) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                        |   |                            |
|----------------------------------------|---|----------------------------|
| In re:                                 | ) | Chapter 11                 |
|                                        | ) |                            |
| IRONNET, INC., *et al.*,[1]            | ) | Case No. 23-11710 (BLS)    |
|                                        | ) |                            |
| Debtors.                               | ) | (Jointly Administered)     |
|                                        | ) |                            |
|                                        | ) |                            |

**BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 4: IRONNET GENERAL UNSECURED CLAIMS**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
> 5:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 11, 2024
> (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE
> DEBTORS**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**") for IronNet, Inc. ("**IronNet**") and certain of its affiliates (such affiliates, together with IronNet, the "**Debtors**").[2]

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 4, 2023 (the "**Voting Record Date**"), a holder (a "**Holder**") of a IronNet General Unsecured Claim against the Debtors.

The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which was included in the package (the "**Solicitation Package**") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may

---

[1]    The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]    Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

obtain a copy (a) from Stretto, Inc. (the "**Voting Agent**") at no charge by: (i) visiting the Voting Agent's website at https://cases.stretto.com/ironnet, (ii) calling (949) 749-7469 (international) or (833) 824-1818   (domestic, toll free), or (iii) sending an electronic message to teamironnet@stretto.com with "IronNet" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at http://www.deb.uscourts.gov.   You should review the Disclosure Statement and the Plan before you vote.   You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.   If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On October 12, 2023, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.   **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.   If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**   To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

## <u>IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4</u>

Claims in Class 4 consist of IronNet General Unsecured Claims. For administrative convenience, each Holder of IronNet General Unsecured Claims must provide the full amount of such claim on the Ballot as set forth in the instructions below.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, except to the extent previously paid during the Chapter 11 Cases or such Holder agrees to less favorable treatment, each Holder of an Allowed IronNet General Unsecured Claim shall receive, in full and final satisfaction of and in exchange for each such Claim, its Pro Rata Share of the Class 4 Lump Sum Payment.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claim**.  The undersigned hereby certifies that as of the
Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of
a IronNet General Unsecured Claim in the aggregate unpaid **principal** amount inserted into the
box below, without regard to any accrued but unpaid interest.

$ _____

Debtor: _____

**Item 2.  Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to
your IronNet General Unsecured Claim below.  Any Ballot not marked either to accept or reject
the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining
acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the Third-Party
Release, injunction, and exculpation provisions set forth in Articles IX.C, D, and E of
the Plan.**

**If you vote to reject the Plan or do not vote to accept or reject the Plan and do not
affirmatively opt out of the Third-Party Release by checking the box in Item 3 below,
you will be deemed to have granted the Third-Party Release set forth in Article IX.C of
the Plan.**

**Please also be advised that the Debtor Release contained in Article IX.B of the Plan will
be included in the Confirmation Order and that it is separate from and independent of
the Third-Party Release.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation provisions in Articles IX.C, D, and E of the
Plan, respectively.**

**Vote of Holder of IronNet General Unsecured Claim on the Plan**.  The undersigned
Holder of a IronNet General Unsecured Claim votes to (check <u>one </u>box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Release Election.**  If you voted to reject the Plan in Item 2 above or did not vote to accept or reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the release contained in Article IX.C of the Plan.  Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without this box checked, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐　　　The undersigned elects **<u>not</u>** to grant the releases contained in Article IX.C of the Plan.

**Item 4.**   Acknowledgments.   By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the IronNet General Unsecured Claim described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other IronNet General Unsecured Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, (iv) the Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot voting the claim and received by the Voting Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Voting Agent, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.   The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

<br>

Name of Holder

<br>

Signature

<br>

Name of Signatory and Title

<br>

Name of Institution (if different than Holder)

<br>

Street Address

<br>

City, State, Zip Code

<br>

Telephone Number

<br>

Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE)** *PROMPTLY* **VIA FIRST CLASS
MAIL (ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR
HAND DELIVERY TO:**

**IronNet, Inc. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to
teamironnet@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**Submit your Ballot via the Voting Agent's online portal at
https://cases.stretto.com/ironnet/.  Click on the "Submit E-Ballot" section of the website
and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized electronic Ballot:**

**Unique E-Ballot ID#:**_____

**Unique E-Ballot Pin:**_____

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission.  Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of IronNet General Unsecured Claims who cast a Ballot using the Voting Agent's
online portal should NOT also submit a paper Ballot.**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT **ON OR
BEFORE <u>JANUARY 11, 2024</u>, AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AND IF
THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE
DISCRETION OF THE DEBTORS.

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, or does not contain an original signature will not be counted.  You may return the Ballot by either of the following two methods:

    **Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted as a vote on the Plan, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope via first class mail, or via overnight courier or hand delivery, to the following address:

    ---

    **IronNet, Inc. Ballot Processing**
    **c/o Stretto**
    **410 Exchange, Suite 100**
    **Irvine, CA 92602**

    ---

    **Use of Online Ballot Portal.**  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.stretto.com/ironnet.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

    **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.  The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; and/or (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

3.  You must vote all your IronNet General Unsecured Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different IronNet General Unsecured Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise

properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.   If you elect <u>not</u> to grant the releases contained in Article IX.C of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release set forth in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

5.   The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

6.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or opt-out of the Third-Party Release.

7.   If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

8.   If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class.

9.   For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

10.  In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

30943011.5

13.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED OR SUBMIT YOUR E-BALLOT VIA THE ONLINE PORTAL.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Exhibit 1

*Releases, Discharges, Injunctions, and Exculpations*

**If you are entitled to vote on the Plan and you submit a Ballot and do not affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, you shall be deemed to have granted the release provisions set forth in Article IX.C of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

## ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

"**Exculpated Party**" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-

bankruptcy law; *provided, however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

**B.**     *Release by the Debtors*

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule

or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article IX.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

C.      *Third-Party Release*

        Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not

operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.

D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and

30943011.5

4

not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

**EXHIBIT 1-C**

**Class 5 (OpCo Secured Note Claims) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IRONNET, INC., *et al.*,[1] | ) | Case No. 23-11710 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN**

**CLASS 5: OPCO SECURED NOTE CLAIMS**

---

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 11, 2024 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**") for IronNet, Inc. ("**IronNet**") and certain of its affiliates (such affiliates, together with IronNet, the "**Debtors**").[2]

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 4, 2023 (the "**Voting Record Date**"), a holder (a "**Holder**") of a OpCo Secured Note Claim against the Debtors.

The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which was included in the package (the "**Solicitation Package**") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in

---

[1]     The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]     Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

deciding whether to accept or reject the Plan.  The recoveries described in the Disclosure Statement are subject to confirmation of the Plan.  If you do not have the Solicitation Package, you may obtain a copy (a) from Stretto, Inc. (the "**Voting Agent**") at no charge by: (i) visiting the Voting Agent's website at https://cases.stretto.com/ironnet, (ii) calling (949) 749-7469 (international) or (833) 824-1818 (domestic, toll free), or (iii) sending an electronic message to teamironnet@stretto.com with "IronNet" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at http://www.deb.uscourts.gov.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On October 12, 2023, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5**

Claims in Class 5 consist of OpCo Secured Note Claims.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, each Holder of an Allowed OpCo Secured Note Claim shall receive, in full and final satisfaction of its Allowed IronNet Secured Note Claim:

a.  In the event of a Restructuring, its Pro Rata Share of the New Common Equity in Reorganized IronNet; or

b.  In the event of a Sale Transaction, except as otherwise provided in and giving effect to any applicable Sale Order, its Pro Rata Share of (1) Cash held by the Debtors immediately following consummation less, (2) without duplication, (a) the Cash to be distributed to Holders of Allowed DIP Facility Claims, Allowed General Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims as provided herein, (b) the amount required to fund the Professional Fee Escrow Account, and (c) the Wind-Down Budget.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**.  The undersigned hereby certifies that as of the
Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of
a OpCo Secured Note Claim in the aggregate unpaid **principal** amount inserted into the box below,
without regard to any accrued but unpaid interest.

$

**Item 2. Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to
your OpCo Secured Note Claim below.  Any Ballot not marked either to accept or reject the Plan,
or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or
rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the Third-Party
Release, injunction, and exculpation provisions set forth in Articles IX.C, D, and E of
the Plan.**

**If you vote to reject the Plan or do not vote to accept or reject the Plan and do not
affirmatively opt out of the Third-Party Release by checking the box in Item 3 below,
you will be deemed to have granted the Third-Party Release set forth in Article IX.C of
the Plan.**

**Please also be advised that the Debtor Release contained in Article IX.B of the Plan will
be included in the Confirmation Order and that it is separate from and independent of
the Third-Party Release.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation provisions in Articles IX.C, D, and E of the
Plan, respectively.**

**Vote of Holder of OpCo Secured Note Claim on the Plan**.  The undersigned Holder of
an OpCo Secured Note Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election.** If you voted to reject the Plan in Item 2 above or did not vote to accept or reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the release contained in Article IX.C of the Plan. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐    The undersigned elects **<u>not</u>** to grant the releases contained in Article IX.C of the Plan.

**Item 4.** Acknowledgments.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the OpCo Secured Note Claim described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other OpCo Secured Note Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (iv) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR
HAND DELIVERY TO:**

**IronNet, Inc. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to
teamironnet@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**Submit your Ballot via the Voting Agent's online portal at
https://cases.stretto.com/ironnet/. Click on the "Submit E-Ballot" section of the website
and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Unique E-Ballot Pin:_____**

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission. Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of OpCo Secured Note Claims who cast a Ballot using the Voting Agent's online
portal should NOT also submit a paper Ballot.**

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS BALLOT **ON OR
BEFORE JANUARY 11, 2024**, **AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AND IF
THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE
DISCRETION OF THE DEBTORS.

30943011.5

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, or does not contain an original signature will not be counted.  You may return the Ballot by either of the following two methods:

**Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted as a vote on the Plan, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope via first class mail, or via overnight courier or hand delivery, to the following address:

> **IronNet, Inc. Ballot Processing**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

**Use of Online Ballot Portal.**  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.stretto.com/ironnet.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

**The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.      The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; and/or (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

3.      You must vote all your OpCo Secured Note Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different OpCo Secured Note Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly

executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4. If you elect <u>not</u> to grant the releases contained in Article IX.C of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release set forth in Article IX.C of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

5. The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

6. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or opt-out of the Third-Party Release.

7. If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede and revoke any prior Ballot, *provided* that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

8. If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class.

9. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

10. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED OR SUBMIT YOUR E-BALLOT VIA THE ONLINE PORTAL.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Exhibit 1

*Releases, Discharges, Injunctions, and Exculpations*

**If you are entitled to vote on the Plan and you submit a Ballot and do not affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, you shall be deemed to have granted the release provisions set forth in Article IX.C of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.  Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

## ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION

### A.    *Defined Terms*

"**Exculpated Party**" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee;  and  (d)  all  financial  advisors,  attorneys,  accountants,  investment  bankers  and  other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-

bankruptcy law; *provided*, *however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

B.    *Release by the Debtors*

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule

or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this **Article IX.B** shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

C.    *Third-Party Release*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not

operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.

D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however,* that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and

not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

# **EXHIBIT 1-D**

**Class 7 (OpCo Other Unsecured Claims) Ballot**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| IRONNET, INC., *et al.*,[1] | ) Case No. 23-11710 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) |

### BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN

### CLASS 7: OPCO OTHER UNSECURED CLAIMS

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 11, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**") for IronNet, Inc. ("**IronNet**") and certain of its affiliates (such affiliates, together with IronNet, the "**Debtors**").[2]

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 4, 2023 (the "**Voting Record Date**"), a holder (a "**Holder**") of a OpCo Other Unsecured Claim against the Debtors.

The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which was included in the package (the "**Solicitation Package**") you are receiving with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may

---

[1] The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474). The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2] Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

obtain a copy (a) from Stretto, Inc. (the "**Voting Agent**") at no charge by: (i) visiting the Voting Agent's website at https://cases.stretto.com/ironnet, (ii) calling (949) 749-7469 (international) or (833) 824-1818   (domestic, toll free), or (iii) sending an electronic message to teamironnet@stretto.com with "IronNet" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at http://www.deb.uscourts.gov.   You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Voting Agent *immediately* at the address, telephone number, or email address set forth below.

On October 12, 2023, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

## <u>IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7</u>

Claims in Class 7 consist of OpCo Other Unsecured Claims.  For administrative convenience, each Holder of OpCo Other Unsecured Claims must provide the full amount of such claim on the Ballot as set forth in the instructions below.

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, except to the extent previously paid during the Chapter 11 Cases or such Holder agrees to less favorable treatment, each Holder of an Allowed OpCo Other Unsecured Claim shall receive, in full and final satisfaction of and in exchange for each such Claim, its Pro Rata Share of the Class 7 Lump Sum Payment.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

> PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claim**.  The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a OpCo Other Unsecured Claim in the aggregate unpaid **principal** amount inserted into the box below, without regard to any accrued but unpaid interest.

> $_____
>
> Debtor: _____

**Item 2.  Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to your OpCo Other Unsecured Claim below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you vote to accept the Plan, you shall be deemed to have consented to the Third-Party Release, injunction, and exculpation provisions set forth in Articles IX.C, D, and E of the Plan.**
>
> **If you vote to reject the Plan or do not vote to accept or reject the Plan and do not affirmatively opt out of the Third-Party Release by checking the box in Item 3 below, you will be deemed to have granted the Third-Party Release set forth in Article IX.C of the Plan.**
>
> **Please also be advised that the Debtor Release contained in Article IX.B of the Plan will be included in the Confirmation Order and that it is separate from and independent of the Third-Party Release.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Articles IX.C, D, and E of the Plan, respectively.**

**Vote of Holder of OpCo Other Unsecured Claim on the Plan**.  The undersigned Holder of a OpCo Other Unsecured Claim votes to (check one box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

30943011.5

4

**Item 3.  Optional Release Election.**  If you voted to reject the Plan in Item 2 above or did not vote to accept or reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the release contained in Article IX.C of the Plan.  Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without this box checked, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

☐      The undersigned elects **<u>not</u>** to grant the releases contained in Article IX.C of the Plan.

**Item 4.**  Acknowledgments.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the OpCo Other Unsecured Claim described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other OpCo Other Unsecured Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, (iv) the Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot voting the claim and received by the Voting Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Voting Agent, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

---
Name of Holder

---
Signature

---
Name of Signatory and Title

---
Name of Institution (if different than Holder)

---
Street Address

---
City, State, Zip Code

---
Telephone Number

---
Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR
HAND DELIVERY TO:**

**IronNet, Inc. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to
teamironnet@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**Submit your Ballot via the Voting Agent's online portal at
https://cases.stretto.com/ironnet/.  Click on the "Submit E-Ballot" section of the website
and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Unique E-Ballot Pin:_____**

**The Voting Agent's online portal is the sole manner in which Ballots will be accepted via
electronic or online transmission.  Ballots submitted by facsimile, email or other means of
electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot
ID# you receive, as applicable.**

**Holders of OpCo Other Unsecured Claims who cast a Ballot using the Voting Agent's
online portal should NOT also submit a paper Ballot.**

---

IF THE VOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT **ON OR
BEFORE <u>JANUARY 11, 2024</u>**, **AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AND IF
THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE
DISCRETION OF THE DEBTORS.

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 749-7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, or does not contain an original signature will not be counted.  You may return the Ballot by either of the following two methods:

**Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted as a vote on the Plan, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope via first class mail, or via overnight courier or hand delivery, to the following address:

> **IronNet, Inc. Ballot Processing**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

**Use of Online Ballot Portal.**  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://cases.stretto.com/ironnet.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

**The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.    The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; and/or (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

3.    You must vote all your OpCo Other Unsecured Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different OpCo Other Unsecured Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise

properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you elect not to grant the releases contained in Article IX.C of the Plan, check the box in Item 3. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release set forth in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, (i) you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law and (ii) if you checked this box, your election not to grant the releases will not be counted.

5.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

6.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or opt-out of the Third-Party Release.

7.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

8.    If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class.

9.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

10.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE
        ENVELOPE PROVIDED OR SUBMIT YOUR E-BALLOT VIA THE ONLINE
        PORTAL.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR
        BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR
        THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (949) 749-
        7469 (INTERNATIONAL) OR (833) 824-1818 (DOMESTIC, TOLL FREE) OR BY
        SENDING AN EMAIL TO TEAMIRONNET@STRETTO.COM WITH "IRONNET" IN
        THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE
        BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE
        LEGAL ADVICE.

## Exhibit 1

*Releases, Discharges, Injunctions, and Exculpations*

**If you are entitled to vote on the Plan and you submit a Ballot and do not affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, you shall be deemed to have granted the release provisions set forth in Article IX.C of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

## ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

"**Exculpated Party**" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-

bankruptcy law; *provided, however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

B.      *Release by the Debtors*

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule

or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this <u>Article IX.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

C.      *Third-Party Release*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not

operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.

D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and

30943011.5

not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

## **EXHIBIT 2**

**Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IRONNET, INC., *et al.*,[1] | ) | Case No. 23-11710 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT ON
AN INTERIM BASIS; AND (II) THE HEARING TO CONSIDER (A) FINAL
APPROVAL OF THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE
INFORMATION AND (B) CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On October 12, 2023 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (the "**Debtors**") filed voluntary petitions for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**I.        APPROVAL OF DISCLOSURE STATEMENT ON AN INTERIM BASIS**

1.        On December [__], 2023, the Court entered an order (the "**Solicitation Procedures Order**"), which, among other things, approved the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**") on an interim basis for solicitation purposes only.

2.        Copies of the Disclosure Statement, the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code.* (as may be amended, modified, or supplemented from time to time, the "**Plan**"),[2] the Solicitation Procedures Order, and all other documents filed in the Chapter 11 Cases may be obtained and reviewed without charge by (i) calling the Debtors' restructuring hotline at (833) 824-1818 (or (949) 749-7469 for international calls); (ii) visiting the Debtors' restructuring website at: https://cases.stretto.com/ironnet; and/or (iii) sending an email to teamironnet@stretto.com.

**II.       HEARING TO CONSIDER (A) FINAL APPROVAL OF THE DISCLOSURE
STATEMENT AS CONTAINING ADEQUATE INFORMATION AND
(B) CONFIRMATION OF THE PLAN**

3.        **Combined Hearing.** A hearing (the "**Combined Hearing**") to consider (a) final approval of the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (b) confirmation of the Plan will be held before the Honorable Judge Brendan L. Shannon, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of

---

[1]    The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Delaware, located at 824 Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801, on January 18, 2024 at 10:00 a.m. (prevailing Eastern Time).  The Combined Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date at the Combined Hearing or any continued hearing or as indicated in any notice filed with the Court on the docket in the Chapter 11 Cases.

4.    **Voting Deadline.**  Only Holders of Claims in Class 3 (IronNet Secured Note Claims), Class 4 (IronNet General Unsecured Claims), Class 5 (OpCo Secured Note Claims) and Class 7 (OpCo Other Unsecured Claims) are entitled to vote to accept or reject the Plan.  The deadline for the submission of such votes is January 11, 2024 at 5:00 p.m. (prevailing Eastern Time).

5.    **Parties Not Entitled to Vote.**  Holders of Unimpaired Claims in Class 1 (Secured Claims) Class 2 (Other Priority Claims), and Class 6 (OpCo General Unsecured Claims) are presumed to accept the Plan.  Holders of Impaired Claims in Class 10 (Equity Interests in IronNet) will receive no distribution under the Plan on account of such Claims or Interests and are deemed to reject the Plan.  Holders of Claims in Class 8 (Intercompany Claims) and Interests in Class 9 (Intercompany Interests) will receive no distribution under the Plan on account of such Claims or Interests and are deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims, as described in the Plan, have not been classified and, therefore, Holders of such Claims are not entitled to vote to accept or reject the Plan.  The respective treatment of such unclassified Claims is set forth in Article III of the Plan.

6.    **Objections to Confirmation**.  Objections to confirmation of the Plan, and any objection to the adequacy of the disclosures in the Disclosure Statement, if any, must:  (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of such objection; and (iv) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 and served on the Notice Parties so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on January 11, 2024.  Unless an objection is timely served and filed as prescribed herein, it may not be considered by the Court.

**PLEASE BE ADVISED THAT ARTICLE IX OF THE PLAN CONTAINS CERTAIN <u>RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING</u>:**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

***Release by the Debtors***.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or**

30943011.5

contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however,* that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article IX.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

*Third-Party Release.*  Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the

subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.**

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law; *provided*, *however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

*Exculpation.*  **Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

"**Exculpated Party**" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

*Injunction.*  **Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or**

the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE IX THEREOF.**

Dated: _____, 2023
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/*_____

Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Timothy R. Powell (No. 6894)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
         kenos@ycst.com
         ejustison@ycst.com
         tpowell@ycst.com
         kmcelroy@ycst.com

*Counsel for the Debtors and Debtors in Possession*

**EXHIBIT 3**

**Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| IRONNET, INC., *et al.*,[1] | ) | Case No. 23-11710 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

## NOTICE OF NON-VOTING STATUS

**TO: ALL HOLDERS OF UNCLASSIFIED CLAIMS AND CLAIMS OR INTERESTS IN CLASSES 1, 2, 6, 8, 9, and 10**

### PLEASE TAKE NOTICE OF THE FOLLOWING:

*Conditional Approval of Disclosure Statement*.  on [ ● ], 2023, IronNet, Inc. and its affiliate debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "**Debtors**"), filed (i) their *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**"), and (ii) *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**").[2]  On [__], 2023, the United States Bankruptcy Court for the District of Delaware entered an order approving the Disclosure Statement on a conditional basis (the "**Solicitation Procedures Order**").

*Combined Hearing*.  A hearing to consider final approval of the Disclosure Statement and confirmation of the Plan and any objections thereto (the "**Combined Hearing**") has been scheduled before the Honorable Judge Brendan L. Shannon, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), located at 824 Market Street, 6th Floor, Courtroom 1, on **January 18, 2024 at 10:00 a.m. (Prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time without further notice other than by (a) announcing any adjourned date at the Combined Hearing (or any continued hearing) or (b) filing a notice on the docket of the Chapter 11 Cases.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

### ENTITLEMENT TO VOTE ON THE PLAN

In accordance with the terms of the Plan and the Bankruptcy Code, General Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims (collectively, the "**Unclassified Claims**") are unclassified and are not entitled to vote on the Plan.  Also, Holders of Claims and Interests in

---

[1]     The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]     Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

Classes 1, 2, 6, 8, 9, and 10 under the Plan (collectively, the "**Non-Voting Classes**") are (i) conclusively presumed to have accepted the Plan or deemed to reject the Plan, as applicable, and (ii) not entitled to vote to accept or reject the Plan, as further described below.  You are receiving this notice because you are either (i) a Holder of an Unclassified Claim and, therefore, not entitled to vote on the Plan; or (ii) a Holder of a Claim or Interest in a Class that is conclusively presumed to accept or deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

Your rights are described more fully in the Disclosure Statement and Plan.  If you would like to review the Plan and Disclosure Statement, you may contact Stretto, Inc. ("**Stretto**"), the voting and claims agent retained by the Debtors in these Chapter 11 Cases, by: (1) visiting the Debtors' restructuring website at: https://cases.stretto.com/ironnet; (2) sending an email to teamironnet@stretto.com; and/or (3) calling the Debtors' restructuring hotline at (833) 824-1818 or (949) 749-7469 (for international calls).  You may also obtain these documents and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) via PACER at http://www.deb.uscourts.gov or free of charge at https://cases.stretto.com/ironnet.

### SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

The Plan proposes to modify the rights of certain creditors of the Debtors.  The classification of Claims under the Plan is described generally below.

### SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Treatment of Claim/Interest |
|---|---|---|
| 1 | Other Priority Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 2 | Other Secured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 3 | IronNet Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 4 | IronNet General Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 5 | OpCo Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 6 | OpCo General Unsecured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 7 | OpCo Other Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 8 | Intercompany Claims | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 9 | Intercompany Interests | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 10 | Equity Interests in IronNet | Impaired, and <u>not</u> entitled to vote on account of such Claims (deemed to reject). |

## **DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN**

Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan, you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to Confirmation of the Plan and any objection to the adequacy of the disclosures in the Disclosure Statement. Objections, if any, shall (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **actually received** by each of the following parties on or before **January 11, 2024 at 5:00 p.m. (prevailing Eastern time)**:

a.   counsel to the Debtors (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and (ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan (brian.lohan@arnoldporter.com);

b.   the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, Jr. (Timothy.Fox@usdoj.gov);

c.   counsel to the DIP Lenders, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Raphael M. Russo (rrusso@paulweiss.com), Sean A. Mitchell (smitchell@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com), and Grace Hotz (ghotz@paulweiss.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com) and Joshua B. Brooks (brooks@lrclaw.com); and

d.   counsel to any statutory committee appointed in these Chapter 11 Cases.

Objections not timely filed and served in the manner set forth in the Solicitation Procedures Order shall not be considered and shall be deemed overruled.

> **OBJECTIONS TO CONFIRMATION OF THE PLAN NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

## RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

*Release by the Debtors*.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article IX.B shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete**

obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

*Third-Party Release*   Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise,

**of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.**

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law; *provided*, *however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

***Exculpation*** **Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan;** ***provided, however,*** **that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court;** **provided,** **further,** **that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this** **Article IX.D** **shall or shall be**

deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

"**Exculpated Party**" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

*Injunction*   Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE IX THEREOF.

## COPIES OF THE PLAN AND DISCLOSURE STATEMENT

The Plan and Disclosure Statement are on file with the Clerk of the Bankruptcy Court and may be examined by any interested party at the Clerk's office at any time during regular business hours or by (a) visiting the Debtors' case website (https://cases.stretto.com/ironnet); (b) telephoning Stretto, the voting and claims agent retained by the Debtors in these chapter 11 cases, at  (833) 824-1818 (or (949) 749-7469 for international calls); or (c) sending an email to teamironnet@stretto.com.  In addition, copies of the Plan and Disclosure Statement may be obtained at or viewed on the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE VOTING AND CLAIMS AGENT.

Dated: _____, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/* _____
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Timothy R. Powell (No. 6894)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
            kenos@ycst.com
            ejustison@ycst.com
            tpowell@ycst.com
            kmcelroy@ycst.com

*Counsel for the Debtors and
Debtors in Possession*

30943011.5

# **EXHIBIT 4**

## **Contract Notice**

30943011.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IRONNET, INC., *et al.*,[1] | ) | Case No. 23-11710 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**NOTICE TO CONTRACT AND LEASE COUNTERPARTIES OF (A) PROPOSED
CONFIRMATION OF CHAPTER 11 PLAN, (B) NON-VOTING STATUS, AND
(C) CONTINGENT OPT-OUT ELECTION**

  **PLEASE TAKE NOTICE THAT** you are receiving this notice because you or one of your affiliates is a counterparty to an executory contract or unexpired lease with one or more of the Debtors.

  ***Conditional Approval of Disclosure Statement***.  on [ ● ], 2023, IronNet, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed (i) their *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**"), and (ii) *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**").[2]  On [__], 2023, the United States Bankruptcy Court for the District of Delaware entered an order approving the Disclosure Statement on a conditional basis (the "**Solicitation Procedures Order**").

  ***Combined Hearing***.  A hearing to consider final approval of the Disclosure Statement and confirmation of the Plan and any objections thereto (the "**Combined Hearing**") has been scheduled before the Honorable Judge Brendan L. Shannon, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), located at 824 Market Street, 6th Floor, Courtroom 1, on **January 18, 2024 at 10:00 a.m. (Prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time without further notice other than by (a) announcing any adjourned date at the Combined Hearing (or any continued hearing) or (b) filing a notice on the docket of the Chapter 11 Cases.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

  **PLEASE TAKE FURTHER NOTICE THAT** this notice pertains to certain rights you may have or wish to assert in connection with the proposed Confirmation of the Plan.  This process is related to, but distinct from, the potential assumption or assumption and assignment of your Executory Contract or Unexpired Lease with the Debtors, about which you previously received a notice from the Debtors pursuant to the Bankruptcy Court's *Order (I) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, (II) Establishing Assumption Procedures, and (III) Granting Related Relief* [Docket No.

---

[1]   The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]   Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

[ ● ]].  You should review this notice, notwithstanding your receipt and review of that prior notice or any action you may have taken in response to that prior notice.

## ENTITLEMENT TO VOTE ON THE PLAN

**PLEASE TAKE NOTICE THAT,** strictly in your capacity as a counterparty to an Executory Contract or Unexpired Lease with one or more of the Debtors, you are *not* entitled to vote to accept or reject the Plan.  To the extent your Executory Contract or Unexpired Lease is ultimately rejected by the Debtors, Allowed Claims, if any, arising in respect of such rejection will be placed in either "Class 4 –IronNet General Unsecured Claims" or "Class 7 – OpCo Other Unsecured Claims," which Classes are Impaired under the Plan and entitled to vote on the Plan.  However, unless you timely file a Proof of Claim on account of any rejection damages Claim, you will not receive a Solicitation Package and will not be entitled to vote on the Plan.

Your rights are described more fully in the Disclosure Statement and Plan.  If you would like to review the Plan and Disclosure Statement, you may contact Stretto, Inc. ("**Stretto**"), the Notice and Claims Agent retained by the Debtors in these Chapter 11 Cases, by: (1) visiting the Debtors' restructuring website at: ttps://cases.stretto.com/ironnet; (2) sending an email to teamironnet@stretto.com; and/or (3) calling the Debtors' restructuring hotline at (833) 824-1818 (or (949) 749-7469 for international calls).  You may also obtain these documents and any other pleadings filed in the Debtors' Chapter 11 Cases (for a fee) via PACER at http://www.deb.uscourts.gov or free of charge at https://cases.stretto.com/ironnet.

**PLEASE TAKE FURTHER NOTICE THAT** you may conditionally opt out of the Third-Party Release, although your election to opt out of the Third-Party Release will not be effective unless your Executory Contract or Unexpired Lease has been rejected.  Attached hereto is the Conditional Opt-Out Form (as defined below), and instructions relating to the same.  If you subsequently file a timely Proof of Claim, please use only the opt-out release associated with your Ballot, which will govern whether you have validly opted out of the Third-Party Release in the event of any conflict.

**ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY, INCLUDING THE THIRD-PARTY RELEASE IN ARTICLE IX.C. PURSUANT TO THE TERMS OF THE PLAN, IN ORDER TO CONDITIONALLY OPT OUT OF THE THIRD-PARTY RELEASE, YOU MUST AFFIRMATIVELY OPT OUT OF THE THIRD-PARTY RELEASE ON A CONTINGENT BASIS BY COMPLETING THE FORM ATTACHED AS <u>EXHIBIT A</u> HERETO (THE "<u>CONDITIONAL OPT-OUT FORM</u>") AND SUBMITTING THE CONDITIONAL OPT-OUT FORM SO AS TO BE ACTUALLY RECEIVED BY STRETTO AT OR BEFORE JANUARY 11, 2024.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE SOLICITATION PROCEDURES ORDER.**

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

**PLEASE TAKE NOTICE THAT** the Plan proposes to modify the rights of certain creditors of the Debtors.  The classification of Claims and Interests under the Plan is described generally below.

| Class | Claim/Interest | Treatment of Claim/Interest |
|---|---|---|
| 1 | Other Priority Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 2 | Other Secured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 3 | IronNet Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 4 | IronNet General Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 5 | OpCo Secured Note Claims | Impaired, and entitled to vote on account of such Claims. |
| 6 | OpCo General Unsecured Claims | Unimpaired, and <u>not</u> entitled to vote on account of such Claims (presumed to accept). |
| 7 | OpCo Other Unsecured Claims | Impaired, and entitled to vote on account of such Claims. |
| 8 | Intercompany Claims | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 9 | Intercompany Interests | Either Impaired or Unimpaired and in either case, <u>not</u> entitled to vote on account of such Claims (presumed to accept or deemed to reject). |
| 10 | Equity Interests in IronNet | Impaired, and <u>not</u> entitled to vote on account of such Claims (deemed to reject). |

## <u>OBJECTIONS TO ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN</u>

**PLEASE TAKE NOTICE THAT,** notwithstanding the fact that you are not entitled to vote to accept or reject the Plan, you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to the adequacy of the disclosures in the Disclosure Statement and Confirmation of the Plan. Objections, if any, shall (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **<u>actually</u> <u>received</u>** by each of the following parties (the "**Notice Parties**") on or before **<u>January 11, 2024 at 5:00 p.m. (prevailing Eastern time)</u>** (the "**Objection Deadline**"):

    a.    counsel to the Debtors (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and

(ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan (brian.lohan@arnoldporter.com);

b.  the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, Jr. (Timothy.Fox@usdoj.gov);

c.  counsel to the DIP Lenders, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Raphael M. Russo (rrusso@paulweiss.com), Sean A. Mitchell (smitchell@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com), and Grace Hotz (ghotz@paulweiss.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com) and Joshua B. Brooks (brooks@lrclaw.com); and

d.  counsel to any statutory committee appointed in these Chapter 11 Cases.

[*Remainder of page left intentionally blank*]

**<u>RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS</u>**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

***Release by the Debtors.*** **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this <u>Article IX.B</u> shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete**

30943011.5

5

obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

***Third-Party Release.*** Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise,

**of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.**

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law; *provided*, *however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

***Exculpation.*** **Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan;** *provided, however***, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court;** provided, **further**, **that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this** Article IX.D **shall or shall be**

30943011.5

deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

"**Exculpated Party**" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

*Injunction.*  **Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.**

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT AT THE NUMBER OR ADDRESS SPECIFIED ABOVE.**

Dated: _____, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/* _____

Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Timothy R. Powell (No. 6894)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Emails: sbeach@ycst.com
        kenos@ycst.com
        ejustison@ycst.com
        tpowell@ycst.com
        kmcelroy@ycst.com

*Counsel for the Debtors and*
*Debtors in Possession*

**EXHIBIT A**

**Opt-Out Form**

**OPTIONAL: CONDITIONAL OPT-OUT FORM**

**What is this form?**  This optional form gives you the opportunity to opt out of granting the Third-Party Release described below.  This opt out is conditional and will only be effective if the Debtors decide to reject your Executory Contract or Unexpired Lease and you have a Claim against the Debtors.

**Who should fill out this form?**  You should only consider filling out this form if you have, or may in the future have, a Claim against, or Interest in, the Debtors.  If you are unsure whether you do or will hold such a Claim or Interest, you should consult your own attorney.

**What is the Third-Party Release?**  If you have a Claim against, or Interest in, the Debtors, you are by default deemed to grant the Third-Party Release.  That means you will release, that is, waive or give up, certain legal claims you might have against the parties identified as the "Released Parties" on this form.  If you are unsure whether you have any such claims against the Released Parties, you should consult your own attorney.

**How do I opt out of the Third-Party Release?**  Complete this form and return it as instructed below.  If you are unsure how to complete the form, you should consult your own attorney.

**Will this affect my treatment under the Plan?**  Yes. If you choose to opt out of the Third-Party Release and your Executory Contract or Unexpired Lease is rejected, you will receive no distribution on account of any General Unsecured Claim you may have in the event of a Restructuring (as defined in the Plan).  If you are unsure what distribution, if any, you are entitled to under the Plan in the absence of opting out, you should consult your own attorney.

**What am I being asked to do?**  You have the option of opting out of granting the Third-Party Release.  If you do not wish to opt out, you do not need to do anything, and you will be deemed to grant the Third-Party Release.  If you are uncertain as to whether you should opt out, you should consult your own attorney.

**When is the deadline to submit this form?**  If you wish to opt out, this form must be actually received by the Notice and Claims Agent by January 11, 2024, at 5:00 p.m. Eastern Time, as set forth on the following page.

> **You should read the rest of this form thoroughly.  This summary is qualified in all respects by the information set forth below.  If you have any questions regarding what this form does, you should consult your own attorney.**

You are receiving this opt out election form (the "**Conditional Opt-Out Form**") because you are or may be a counterparty to an Executory Contract or Unexpired Lease and may in the future become a Holder of an IronNet General Unsecured Claim or an OpCo Other Unsecured Claim under the *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as it may be amended, modified or supplemented from time to time, the "**Plan**").[1]

As of the Effective Date of the Plan, certain release, injunction, exculpation and discharge provisions set forth in Article IX of the Plan will become effective. These provisions are set forth below. You may choose to opt out of granting the Third-Party Release set forth in Article IX.C of the Plan by following the instructions set forth in this Conditional Opt-Out Form.

**If you believe you are or may become a Holder of a Claim with respect to the Debtors and choose to opt out of the Third-Party Release set forth in Article IX.C of the Plan, please complete, sign, and date this Conditional Opt-Out Form and return it promptly** via email to Stretto, Inc. ("**Stretto**" or the "**Notice and Claims Agent**") at teamironnet@stretto.com (with "IronNet, Inc. Ballot Submission" in the subject line) with a copy to the Debtors' counsel: (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and (ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan (brian.lohan@arnoldporter.com).

**THIS CONDITIONAL OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY JANUARY 11, 2024, AT 5:00 P.M. (PREVAILING EASTERN TIME) (THE "CONDITIONAL OPT-OUT RELEASE DEADLINE"). IF THE CONDITIONAL OPT-OUT FORM IS RECEIVED AFTER THE CONDITIONAL OPT-OUT RELEASE DEADLINE, IT WILL NOT BE COUNTED OR EFFECTIVE.**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The Plan is attached as Exhibit A to, and described in greater detail in, the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**").

**PLEASE COMPLETE THE FOLLOWING:**

<u>**Item 1**</u>.  **Conditional Opt Out Release Election.**

**UNLESS YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN, YOU WILL BE DEEMED A "NON-DEBTOR RELEASING PARTY" UNDER THE PLAN AND TO PROVIDE THE RELEASE CONTAINED IN ARTICLE IX.C OF THE PLAN SET FORTH BELOW**

To the extent the undersigned holds an Allowed IronNet General Unsecured Claim or an Allowed OpCo Other Unsecured Claim as of the Effective Date of the Plan, the undersigned:

☐     Elects to opt out of granting the Third-Party Release contained in Article IX.C of the Plan.

**Please be advised that by checking the box above you elect NOT to grant the Third-Party Release against the "Released Parties" as that term is defined in the Plan, and set forth at the end of this notice, in each and every capacity in which you hold a Claim against, or Interest in, any of the Debtors.  <u>You must affirmatively check the box above in order to opt out of the Third-Party Release.</u>**

Please also be advised that the Debtor Release contained in Article IX.B of the Plan is separate from and independent of the Third-Party Release.  If you object to the Debtor Release, you must file a separate objection with the Bankruptcy Court in accordance with the procedures described in the Disclosure Statement Order.  Please note that if you opt out, you are ineligible to be a Released Party.

<u>**Item 2**</u>.  **Certifications.**

By signing this Conditional Opt-Out Form, the undersigned certifies that:

(a)     the undersigned is either (i) a non-Debtor counterparty to an Executory Contract or Unexpired Lease that has not been rejected as of the date of signing of the Conditional Opt-Out Form or (ii) an authorized signatory for an Entity that is a non-Debtor counterparty to an Executory Contract or Unexpired Lease that has not been rejected as of the date of execution of this Conditional Opt-Out Form;

(b)     the undersigned has received a Contract/Lease Notice and the Conditional Opt-Out Form and that the Conditional Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

(c)     the undersigned had the ability to review the Plan and Disclosure Statement;

(d)     the undersigned has submitted the same election with respect to all potential IronNet General Unsecured Claims or OpCo Other Unsecured Claims which may arise upon rejection of the Executory Contract(s) and/or Unexpired Lease(s) to which the undersigned is a non-Debtor counterparty; and

(e)     no other Conditional Opt-Out Form with respect to the undersigned's potential IronNet General Unsecured Claim or an OpCo Other Unsecured Claim has been submitted or, if any other Conditional Opt-Out Forms have been submitted with respect to such Claims, then any such earlier Conditional Opt-Out Forms are hereby revoked.

YOUR RECEIPT OF THE CONDITIONAL OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title of Signatory: | _____ |
| Title of Executory Contract or Unexpired Lease: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

## NON-DEBTOR RELEASE OPT OUT ELECTION FORM INSTRUCTIONS

If you have decided <u>NOT</u> to consent to the Non-Debtor Release, complete the opt-out release form indicating that you do not consent to the releases contained in Article IX of the Plan and return this form by email to teamironnet@stretto.com (with "IronNet, Inc. Ballot Submission" in the subject line) with a copy to the Debtors' counsel: (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and (ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan (brian.lohan@arnoldporter.com).

**Item 2**.  **Important information regarding the Third-Party Release.**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

## ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION

### A.    *Defined Terms*

"**Exculpated Party**" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the officers and directors of the Debtors, and any other person serving as a fiduciary of the Debtors' Estates, in each case, who served at any time between the Petition Date and the Effective Date of this Plan; (c) the Committee; and (d) all financial advisors, attorneys, accountants, investment bankers and other professionals retained by the Debtors or the Committee in these Chapter 11 Cases.

"**Non-Debtor Releasing Parties**" means, collectively, each of the following in their capacity as such: (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) vote to reject the Plan and do not affirmatively opt out of granting the releases contained in the Plan; (c) all Holders of Claims that are presumed to accept the Plan; (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan; (e) the DIP Agent and the DIP Lender; (f) C5; (g) the Bridge Lender; (h) each Holder of C5 Notes; (i) each Holder of Director Notes; (j) any Successful Bidder, if applicable; and (k) all other Released Parties (other than (1) any Debtor Releasing Party and (2) any Related Person of any Released Party, except to the extent such Released Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law).

"**Released Party**" means, collectively, each in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) each DIP Lender; (e) C5; (f) the Bridge Lender; (g) each Holder of C5 Notes; (h) each Holder of Director Notes; (i) any Successful Bidder, if any; (j) each Exit Lender; and (k) the respective Related Persons for each of the foregoing provided, that, any party identified in clauses (a) through (k) hereof shall not be a Released Party unless such party is also a Releasing Party.

"**Releasing Party**" means, collectively, the Debtor Releasing Parties and the Non-Debtor Releasing Parties, including each Related Person of each Debtor Releasing Party and Non-Debtor Releasing Party, but solely in their capacity as such to the extent such Non-Debtor Releasing Party and Non-Debtor Releasing Party is legally entitled to bind such Related Person to the releases contained in the Plan under applicable non-bankruptcy law; *provided*, *however*, for the avoidance of doubt, Holders of Equity Interests in IronNet shall not be Releasing Parties.

## ARTICLE IX RELEASE, INJUNCTION, AND RELATED PROVISIONS

### B.    *Release by the Debtors*

**Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action, and any other debts, obligations,**

rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article IX.B shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

C.    *Third-Party Release*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants,

and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.

D.      *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the

restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this Article IX.D shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of the Plan; (c) have been released pursuant to Article IX.C of the Plan, (d) are subject to exculpation pursuant to Article IX.D of the Plan (but only to the extent of the exculpation provided in Article IX.D of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of this Plan, including C5, each DIP Lender, and each Exit Facility Lender.

30945701.2

9

## **EXHIBIT 5**

### **Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| IRONNET, INC., *et al.*,[1] | ) | Case No. 23-11710 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF**

**(I)    APPROVAL OF DISCLOSURE STATEMENT ON AN INTERIM BASIS; AND**

**(II)    THE HEARING TO CONSIDER (A) FINAL APPROVAL OF THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION AND (B) CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

***Conditional Approval of Disclosure Statement***.  on [ ● ], 2023, IronNet, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "**Debtors**") filed (i) their *Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Plan**"), and (ii) *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**").[2]  On [__], 2023, the United States Bankruptcy Court for the District of Delaware entered an order approving the Disclosure Statement on a conditional basis (the "**Solicitation Procedures Order**").

***Combined Hearing***.  A hearing to consider final approval of the Disclosure Statement and confirmation of the Plan and any objections thereto (the "**Combined Hearing**") has been scheduled before the Honorable Judge Brendan L. Shannon, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), located at 824 Market Street, 6th Floor, Courtroom 1, on **January 18, 2024 at 10:00 a.m. (Prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time without further notice other than by (a) announcing any adjourned date at the Combined Hearing (or any continued hearing) or (b) filing a notice on the docket of the Chapter 11 Cases.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

***Voting Deadline***.  All votes to accept or reject the  Plan must be **actually received** by the Debtors' claims and voting agent, Stretto, Inc. (the "**Voting Agent**") by no later than **January 11, 2024 at 5:00 p.m. (Prevailing Eastern Time)**.  Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

---

[1]    The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474).  The Debtors' corporate headquarters is located at 7900 Tysons One Place, Suite 400, McLean, VA 22102.

[2]    Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

30943011.5

*Releases*.  **Please be advised that the Plan contains various releases, exculpation, and injunction provisions that may affect your rights.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE INJUNCTION, RELEASE AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

*Objections*.  The deadline to object or respond to final approval of the Disclosure Statement and confirmation of the Plan (including objections to the releases, injunctions, and exculpation provisions provided therein) is **January 11, 2024 at 5:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

Objections and responses must (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, with a copy served upon the following:  (i) counsel to the Debtors (x) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Sean M. Beach (sbeach@ycst.com), Kenneth J. Enos (kenos@ycst.com), Elizabeth S. Justison (ejustison@ycst.com), and Timothy R. Powell (tpowell@ycst.com), and (y) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60622, Attn: Brian Lohan (brian.lohan@arnoldporter.com); (ii) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn:  Timothy J. Fox, Jr. (Timothy.Fox@usdoj.gov); and (iii) counsel to the DIP Lenders, (x) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn: Raphael M. Russo (rrusso@paulweiss.com),    Sean    A.    Mitchell    (smitchell@paulweiss.com),    Diane    Meyers (dmeyers@paulweiss.com), and Grace Hotz (ghotz@paulweiss.com), and (y) Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com) and Joshua B. Brooks (brooks@lrclaw.com); and  (iv) counsel to any statutory committee appointed in theses chapter 11 cases, so that they are received no later than the Objection Deadline.

**IF OBJECTIONS ARE NOT FILED AND SERVED AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE COMBINED HEARING.**

*Additional Information*.  You may receive a copy of the Plan free of charge from Stretto by (i) calling the Debtors' restructuring hotline at (833) 824-1818 (or (949) 749-7469 for international calls); (ii) visiting the Debtors' restructuring website at: https://cases.stretto.com/ironnet; and/or (iii) sending an email to teamironnet@stretto.com.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:  http://www.deb.uscourts.gov or free of charge at https://cases.stretto.com/ironnet.

30943011.5