IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | ) ) ) | Case No. 23-11710 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF CAMERON PFORR IN SUPPORT OF CONFIRMATION OF
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
IRONNET, INC. AND ITS DEBTOR AFFILIATES UNDER
<u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

I, Cameron Pforr, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1. I am the Chief Financial Officer ("**CFO**") of IronNet, Inc. and its wholly-owned direct or indirect subsidiaries, including IronNet Cybersecurity, Inc., which, along with certain other affiliates, are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this declaration (this "**Declaration**") in support of confirmation of the *Amended Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 231] (as may be amended, supplemented, or modified from time to time, the "**Plan**").[2]

2. I have served as the CFO of the Debtors since September 2022 and the President of the Debtors since July 11, 2023. I hold a bachelor's degree in Computer Science from

---

[1] The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474). The Debtors' mailing address is: IronNet Cybersecurity, Inc., P.O. Box 7395, Halethorpe, Maryland 21227.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

the College of William and Mary, a master's degree in International Studies from the University of Pennsylvania, and a master of business administration from the University of Pennsylvania's Wharton School.

3.  In my capacity as CFO, I am responsible for overseeing the Debtors' operations, business, and financial affairs. As a result of my tenure with the Debtors, my review of public and non-public documents related to the Debtors' business, and my discussions with other members of the Debtors' management team, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtors' employees or retained advisers that report to me in the ordinary course of my responsibilities. References to the Bankruptcy Code, the chapter 11 process, and related legal matters are based on my understanding of such matters in connection with explanations provided to me by counsel. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**I.   OVERVIEW**

4.  As set forth in the *Declaration of Cameron Pforr, President and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4], which I previously submitted in connection with the Debtors' voluntary petitions and certain "first-day" motions, and which is incorporated by reference herein, the Debtors filed for chapter 11 protection with a DIP Term Sheet and Plan that contemplated a dual-track process designed to maximize value for all stakeholders. Following the Petition Date, the Debtors, their management team and advisors, and the DIP Lender diligently pursued both the Restructuring and the Sale Transaction. The Debtors ultimately did not receive any actionable bids toward the Sale

Transaction, but they now stand ready to effectuate the Restructuring. Notably, Confirmation is supported by all Classes of Claims entitled to vote on the Plan, as well as the United States Trustee following extensive, good-faith negotiations involving the Debtors and the DIP Lender. Confirmation represents a significant achievement for all parties in interest which, in my view, was only made possible by the extraordinary contributions of, among others, the Debtors, their management team, their advisors, the DIP Lender, and the United States Trustee.

5.  Based on my observations, the Plan has been proposed in good faith and is the culmination of extensive, arm's-length discussions among the key parties in interest. That work has paved the way to a largely consensual Confirmation Hearing and reorganization process as the Plan, including the release, exculpatory, and injunctive provisions contained therein, enjoys the overwhelming support of creditors. I believe that Confirmation is in the best interests of Holders of Claims and Interests, and that the Plan satisfies the applicable provisions of the Bankruptcy Code.

## II. THE PLAN COMPLIES WITH SECTION 1129 OF THE BANKRUPTCY CODE

6.  The Debtors' advisors have advised me of the applicable standards under which a plan of reorganization may be confirmed. I believe the Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a plan of reorganization. I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Plan, the Plan Supplement, and the related documents or where it will be the subject of other testimony or evidence to be introduced in connection with the Confirmation Hearing.

### A. The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

7.  Based on my discussions with the Debtors' advisors, I believe that the Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code, as follows:

A.      Plan Classification Structure (11 U.S.C. § 1122)

8. Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims, DIP Facility Claims, and Priority Tax Claims, which I understand need not be classified. The Plan contains the following twelve Classes of Claims and Interests: (a) Class 1 (Other Priority Claims); (b) Class 2 (Other Secured Claims); (c) Class 3 (IronNet Secured Note Claims); (d) Class 4 (IronNet Unsecured Note Claims); (e) Class 5 (IronNet General Unsecured Claims); (f) Class 6 (OpCo Secured Note Claims); (g) Class 7 (OpCo Unsecured Trade Claims); (h) Class 8 (OpCo Unsecured Non-Trade Claims); (i) Class 9 (Intercompany Claims); (j) Class 10 (Intercompany Interests); (k) Class 11 (Subordinated Claims); and (l) Class 12 (Equity Interests in IronNet). Each Class contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class, and I believe that valid business, factual, and legal reasons exist for the separate classification of each Class.

B.      Proper Classification (11 U.S.C. § 1123(a)(1))

9. I understand that Article III of the Plan designates Classes of Claims and Interests.

C.      Specified Unimpaired Claims and Interests (11 U.S.C. § 1123(a)(2))

10. I understand that Article III.B of the Plan specifies that (a) Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and, through the Restructuring, Class 7 (OpCo Unsecured Trade Claims) are Unimpaired under the Plan and (b) Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) are either Unimpaired or Impaired under the Plan.

D.      Specified Treatment of Impaired Claims and Interests (11 U.S.C. § 1123(a)(3))

11. I understand that Article III.B of the Plan specifies the treatment of Impaired Claims in Class 3 (IronNet Secured Note Claims), Class 4 (IronNet Unsecured Note Claims), Class

5 (IronNet General Unsecured Claims), Class 6 (OpCo Secured Note Claims), Class 8 (OpCo Unsecured Non-Trade Claims), Class 11 (Subordinated Claims), and Class 12 (Equity Interests in IronNet).

    E.  Equal Treatment (11 U.S.C. § 1123(a)(4))

12. I understand that Article III.B of the Plan provides for the same treatment for each Claim or Interest within a particular Class, unless the holder of a Claim or Interest agrees to a less favorable treatment of its Claim or Interest.

    F.  Adequate Means for Implementation of Plan (11 U.S.C. § 1123(a)(5))

13. I believe that Article IV and various other provisions of the Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including: (a) the establishment of a Professional Fee Escrow Account to secure the payment of certain Professional Fee Claims; (b) the good-faith compromise and settlement of Claims as set forth in the Korr Settlement and the 3i Settlement; (c) the effectuation of the transactions included as part of the Restructuring; (d) the vesting of certain of the Debtors' property in the Reorganized Debtors; (e) the cancellation of certain financial instruments and Interests; (f) by specifying the sources of consideration for distributions under the Plan; (g) the approval of the terms of the Exit Facility, including the Secured Convertible Note, the 3i Takeback Note, and associated agreements; (h) the issuance of the Reorganized IronNet Equity; (i) by addressing tax treatment and reporting in connection with the transactions contemplated by the Plan; (j) the appointment of the New Board and deemed resignation of the Debtors' directors as of the Effective Date; (k) by providing authority to the Reorganized Debtors to pursue, settle, or abandon retained Causes of Action; (l) by providing authority to undertake

corporate actions necessary to effectuate the Plan; and (m) the rejection or assumption of Executory Contracts and Unexpired Leases.

G. <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>

14. I understand that, to the extent applicable, the New Organizational Documents set forth in the Plan Supplement prohibit the issuance of non-voting equity securities.

H. <u>Designation of Directors and Officers 11 U.S.C. § 1123(a)(7))</u>

15. I understand that the members of the New Board will be identified prior to the Effective Date and that the Debtors' current officers will remain in place, subject to the rights and powers of the New Board to remove or replace them. I believe that the selection of such individuals is consistent with the interests of Holders of Claims and Interests and with public policy (as discussed further below).

I. <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>

16. I understand that Article III of the Plan renders Impaired, or leaves Unimpaired, as the case may be, each Class of Claims and Interests.

J. <u>Assumption, Assignment, and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>

17. I understand that Article V of the Plan provides that, on the Effective Date or an earlier date, as applicable, any Executory Contract or Unexpired Lease (a) not previously assumed or (b) not previously rejected pursuant to an order of the Bankruptcy Court, subject to the reasonable consent of the DIP Agent, will be deemed assumed as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except any Executory Contract or Unexpired Lease (x) identified on the Rejected Contracts List filed as part of the Plan Supplement, (y) that is the subject of a separate motion or notice to reject pending as of the Effective Date, or (z) that

previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code).

18. The Debtors have carefully reviewed the Executory Contracts and Unexpired Leases, and decisions to assume or reject each Executory Contract and Unexpired Lease were made in consultation with the Debtors' advisors and the DIP Lender, and after considering, among other things, go-forward business needs and other relevant business factors. The Debtors have provided notice to each non-Debtor counterparty to each Executory Contract and Unexpired Lease of the treatment of such non-Debtor counterparty's Executory Contract or Unexpired Lease pursuant to the Plan, as well as the applicable Cure Cost. The Debtors have provided adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) with respect to Assumed Contracts and have complied with section 365 of the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code.

K. <u>Settlement of Claims; Retention and Enforcement of Causes of Action (11 U.S.C. § 1123(b)(3))</u>

19. I understand that section 1123(b)(3) of the Bankruptcy Code provides that a chapter 11 plan may "provide for—(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement . . . by a representative of the estate appointed for such purpose, of any claim or interest." 11 U.S.C. § 1123(b)(3).

20. As discussed in greater detail in Section III below, Article IX of the Plan provides for a settlement and release of certain Claims and Causes of Action owned by the Debtors, as well as exculpation provisions and injunctive provisions prohibiting parties from pursuing Claims and Causes of Action released under the Plan. I believe that these provisions are proper and in the best interests of the Debtors and their Estates because, among other reasons, they are the product of good faith, arm's-length negotiations, were a material inducement for parties to

support the comprehensive restructuring embodied in the Plan, are supported by substantial contribution, received overwhelming support from the Classes entitled to vote on the Plan as demonstrated by the Voting Report, and are supported by the Debtors and their key constituents.

      L.      <u>Sale of Property (11 U.S.C. § 1123(b)(4))</u>

      21.      I understand that, because the Debtors are consummating the Restructuring, section 1123(b)(4) of the Bankruptcy Code is inapplicable to the Plan.

      M.      <u>Modification of Rights of Holders of Claims (11 U.S.C. § 1123(b)(5))</u>

      22.      I understand that Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of each Class of Claims.

      N.      <u>Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1123(b)(6))</u>

      23.      I understand that the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including: (a) the provisions of Article IV regarding the means for executing and implementing the Plan; (b) the provisions of Article V governing the treatment of Executory Contracts and Unexpired Leases; (c) the provisions of Article VI governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (d) the provisions of Articles IX.B, IX.C, and IX.D regarding the Debtor Release, Third-Party Release, and Exculpation; (e) the provisions of Article IX.E regarding the injunction; and (f) the provisions of Article X regarding retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date.

      **B.**      **The Debtors Have Complied with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

      24.      On the basis of my understanding and discussions that I have had with the Debtors' advisors, I believe that the Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections

1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted, and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Disclosure Statement Order. The Debtors and their respective members, officers, directors, managers, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

      **C.**      **The Plan Is Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**

25.    I understand that section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law.

26.    The Debtors proposed the Plan (including the Plan Supplement and all related documents) in good faith and not by any means forbidden by law and for the legitimate and honest purpose of maximizing the value of the Estates for the benefit of all holders of Claims and Interests. I believe that the Plan itself and the vigorous, arm's-length negotiations among the Debtors and other key parties in interest, as well as the overwhelming support of creditors for the Plan, provide robust evidence of the Debtors' good faith in proposing the Plan. Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each, in my view, necessary for the transactions contemplated by the Plan.

**D. The Plan Provides for Court Approval of Fee Claims (11 U.S.C. § 1129(a)(4))**

27. I understand that section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by a plan proponent must be approved by, or remain subject to approval by, the Court as reasonable.

28. I understand that Article II.A.2 of the Plan provides that any payment made or to be made by the Debtors for services or for costs and expenses of professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, must have been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

**E. The Plan Discloses Necessary Information Regarding Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**

29. I understand that section 1129(a)(5) the Bankruptcy Code requires disclosure of the identity and affiliations of the proposed officers and directors of a debtor post-confirmation, that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and that there be disclosure of the identity of and compensation to insiders retained post-confirmation, if any.

30. Information concerning the identity and affiliations of the Persons proposed to serve as the initial directors of the Reorganized Debtors will be disclosed in the Plan Supplement. To the extent known by the Debtors, the proposed compensation payable to any insiders to be employed or retained by the Reorganized Debtors will also be disclosed in the Plan Supplement. I understand that the Debtors' existing officers will remain in place following the Effective Date, subject to the rights of the New Board to remove or replace them.

F. **The Plan Does Not Provide for Rate Changes (11 U.S.C. § 1129(a)(6))**

31. I understand that section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.

32. The Plan does not provide for any rate changes by any of the Reorganized Debtors.

G. **The Plan is Confirmable Notwithstanding the Non-Acceptance of Certain Classes of Impaired Claims (11 U.S.C. § 1129(a)(8))**

33. I understand that section 1129(a)(8) of the Bankruptcy Code requires that each class of Claims or Interests either accept the Plan or not be impaired thereby.

34. Certain Classes of Claims are Unimpaired and are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. In addition, at least one Impaired Class entitled to vote has voted to accept the Plan (without considering acceptances of the Plan by any "insider" as defined in the Bankruptcy Code). Because the Plan provides that certain Classes of Claims and Interests are Impaired and no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Accordingly, section 1129(a)(8) is not satisfied; *however*, as set forth below, the Plan is nevertheless confirmable because it satisfies the requirements of section 1129(b).

H. **The Plan Appropriately Treats Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**

35. I understand that section 1129(a)(9) of the Bankruptcy Code requires the Plan to satisfy Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Other Priority Claims in the Allowed amount of such Claim, subject to the terms of such section, unless the Holder of a particular Claim agrees to different treatment with respect to such Claim.

36. Article II of the Plan provides for treatment of Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Other Priority Claims, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003, in the manner required by section 1129(a)(9) of the Bankruptcy Code.

### I. The Plan Has Been Accepted by an Impaired Class (11 U.S.C. § 1129(a)(10))

37. I understand that section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired Class of Claims must accept the Plan, excluding acceptance by any insider. As indicated in the Voting Report, Class 3 (IronNet Secured Note Claims), Class 4 (IronNet Unsecured Note Claims), Class 6 (OpCo Secured Note Claims), and Class 8 (OpCo Unsecured Non-Trade Claims) are Impaired and have voted to accept the Plan (without considering acceptances of the Plan by any "insider" as defined in the Bankruptcy Code). Notably, even though Class 7 (OpCo Unsecured Trade Claims) is Unimpaired as a result of the Restructuring, Class 7 was entitled to vote solely for purposes of a Sale Transaction and also voted in favor of the Plan.

### J. The Plan is Feasible (11 U.S.C. § 1129(a)(11))

38. I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to determine that a chapter 11 plan is feasible and that confirmation of such plan is not likely to be followed by the liquidation or further financial reorganization of the debtor.

39. Based on, among other things, my experience with the Debtors, my understanding of their business plan and the Plan, and my familiarity with the parties that will be taking over ownership of the Debtors, I believe that the Plan is feasible and Confirmation is unlikely to be followed by liquidation or further reorganization. This belief is supported by, among other things, the financial projections included in the Plan Supplement, which are, in my view, based on reasonable assumptions and demonstrate that the Reorganized Debtors will be adequately capitalized to operate their business and service their ordinary course obligations barring any

significant deviations from the assumptions contained therein. Other factors that I consider relevant in establishing feasibility include the magnitude of the financial deleveraging being effectuated under the Plan that will serve to right-size the Debtors' capital structure, the continuity of existing management contemplated by the Plan that will ensure the preservation of key knowledge, and the track record of support demonstrated by the DIP Lender and my belief that the DIP Lender is committed to ensuring future success for the Debtors post-Confirmation. I understand that the Debtors' financial advisor, Robert Wagstaff of Riveron RTS, LLC, filed a separate declaration contemporaneously herewith in further support of the Plan's feasibility.

### K.  The Plan Provides for Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))

40. I understand that Article II.D of the Plan provides for the payment of all fees due and payable pursuant to 28 U.S.C. § 1930 by the Debtors before or as of the Effective Date.

### L.  Any Retirement Benefits Will Be Maintained by the Reorganized Debtors (11 U.S.C. § 1129(a)(13))

41. I understand that Article V.F of the Plan provides that, subject to the provisions of the Plan, all Compensation and Benefits Programs—which are defined to include retirement benefits, if any—will be treated as Executory Contracts under the Plan and, with the consent of the DIP Agent, will be deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Accordingly, I believe that, to the extent the Debtors provided retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code) before the Effective Date, such benefits will be maintained, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

M. **Inapplicable Provisions (11 U.S.C. § 1129(a)(14)-(16))**

42. I understand that the Debtors are not (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.

N. **The Plan Satisfies the "Cramdown" Requirements for Nonconsensual Confirmation (11 U.S.C. § 1129(b))**

43. I understand that section 1129(b) of the Bankruptcy Code provides for confirmation of the Plan where it is not accepted by all Impaired Classes of Claims and Interests, *i.e.*, a "cramdown," so long as the Plan does not discriminate unfairly and is fair and equitable with respect to Classes that have not accepted the Plan.

44. Here, the only Classes that have rejected the Plan are Class 5 (IronNet General Unsecured Claims), Class 11 (Subordinated Claims), Class 12 (Equity Interests in IronNet), and at the applicable Debtor's discretion, Class 9 (Intercompany Claims), and Class 10 (Intercompany Interests) (collectively, the "**Deemed Rejecting Classes**"), which each consist of Holders of Claims or Interests entitled to no recovery under the Plan, that are conclusively deemed to have rejected the Plan, and therefore are not entitled to vote to accept or reject the Plan. The requirements for cramdown are satisfied. There is no unfair discrimination against the Deemed Rejecting Classes because there are no other similarly situated Classes to the Deemed Rejecting Classes, given each Class's distinct legal character from all other Claims and Interests. In addition, the Plan provides the Deemed Rejecting Classes with fair and equitable treatment, as there are no Holders of Claims or Interests junior to the Deemed Rejecting Classes who are receiving or retaining any property under the Plan.

O. **The Plan is the Only Plan in the Chapter 11 Cases (11 U.S.C. § 1129(c))**

45. I understand that the Plan (including previous versions thereof) is the only chapter 11 plan proposed in the Chapter 11 Cases.

### P. The Primary Purpose of the Plan Is Not the Avoidance of Taxes or Section 5 of the Securities Act (11 U.S.C. § 1129(d))

46. I understand that the primary purpose of the Plan is not the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no objection filed by any governmental unit asserting such avoidance.

### III. THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN ARE APPROPRIATE

47. I understand that Article IX of the Plan sets forth certain release, exculpation, and injunction provisions, as permitted by section 1129(b) of the Bankruptcy Code, including (a) the Debtor Release pursuant to Article IX.B of the Plan, (b) the Third-Party Release pursuant to Article IX.C of the Plan, (c) the Exculpation pursuant to Article IX.D of the Plan, and (d) the injunction pursuant to Article IX.E of the Plan. Based on my knowledge of the Debtors' restructuring efforts and information provided by the Debtors and their advisors, I believe that these provisions are appropriate because, among other reasons, they are the product of good-faith, arm's-length negotiations, were a material inducement for parties to support the comprehensive restructuring embodied in the Plan, and are supported by substantial contribution, including, among other things, the DIP Lender agreeing to backstop and support the Plan, consenting to the use of cash collateral, equitizing their Claims, providing the DIP Facility and the Exit Facility, as well as significant commitments of time and effort by the Debtors' board of directors and management toward achieving a successful, value-maximizing reorganization in addition to their regular duties. Moreover, these provisions received overwhelming support from the Classes entitled to vote on the Plan as demonstrated by the Voting Report, and are supported by the Debtors and their key constituents, and are consistent with the scope of similar provisions approved by courts in this district in other similar chapter 11 cases. As set forth more fully below, I believe that the releases and exculpations included as part of the overall compromise and settlement

30995351.5

embodied by the Plan are fair, equitable, and reasonable, and also are necessary and integral components of the Plan.

### A. The Debtor Release Should Be Approved

48. I believe that the Debtor Release set forth in Article IX.B of the Plan constitutes an essential and critical provision of the Plan and formed an integral part of the agreement among all parties in interest embodied in the Plan.

49. It is my view that the Debtor Release appropriately offers protection to parties that directly or constructively participated in the Debtors' restructuring efforts. These parties include the DIP Lender, C5, the Exit Facility Lenders, and the Debtors' board of directors and management who contributed as set forth above. Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and were a material term of the DIP Term Sheet that formed the basis for the Plan. In addition, many of the parties receiving the Debtor Release, including a number of officers, directors, and Estate professionals, have served the Debtors during the Chapter 11 Cases, and I believe that they have worked tirelessly to maximize value for the benefit of all stakeholders.

50. In short, I believe that the Plan's inclusion of the Debtor Release reflects the consideration of potential Causes of Action that the Debtors may hold against the Released Parties and extensive negotiations with key constituents, including the DIP Lender. Those negotiations, moreover, were conducted by sophisticated parties, represented by capable legal and financial advisors, that have a vested interest in ensuring that any valuable Causes of Action are preserved. I therefore believe that the Debtor Release is an essential component of the Plan and constitutes a sound exercise of the Debtors' business judgment. I believe that without the Debtor Release, the Debtors would neither have been able to secure the significant benefits provided by

the Plan nor build consensus around the Plan. And to the best of my knowledge, the Debtors are not releasing any colorable Causes of Action against the Released Parties.

### B.    The Third-Party Release Should Be Approved

51.    Article IX.C of the Plan provides for a customary, consensual third-party release by the Non-Debtor Releasing Parties, which is integral to the Plan and given in exchange for consideration. The beneficiaries of the Third-Party Release made valuable and significant contributions to the proposed reorganization of the Debtors, including as described above with respect to the Debtor Release.  Further, the Third-Party Release is narrowly tailored to reflect the arm's-length, good-faith negotiations that resulted in the Plan, which is in the best interest of the Debtors and their estates.   In addition, the Plan expressly provides that Holders of Equity Interests in IronNet, Holders of Subordinated Claims, and Holders of IronNet General Unsecured Claims are not Releasing Parties.

52.    I believe that the solicitation materials and other noticing materials filed and served in connection with the Disclosure Statement provided recipients with timely, sufficient, appropriate and adequate notice of the Third-Party Release, including that (a) all Holders of Claims that voted to accept the Plan and did not affirmatively opt-out would grant the Third-Party Release; (b) all Holders of Claims that were entitled to vote to accept or reject the Plan but that either (x) do not vote to accept or to reject the Plan or (y) voted to reject the Plan and did not affirmatively opt out would grant the Third-Party Release; (c) all Holders of Claims that are presumed to accept the Plan would grant the Third-Party Release; and (d) all Holders of Claims that are deemed to reject the Plan and fail to timely object to the releases contained in the Plan would grant the Third-Party Release, subject to the express exclusion of the Holders of Equity Interests in IronNet, Holders of Subordinated Claims, and Holders of IronNet General Unsecured Claims discussed above.

Accordingly, I also believe that each Releasing Party expressly consented to the Third-Party Release and, therefore, the Third-Party Release should be approved as consensual.

53. The Plan and releases described above enjoy the support of the Debtors, their management, and the DIP Lender, and I understand that they were not objected to by the United States Trustee. The Voting Report, moreover, demonstrates strong support for the Plan's settlements and releases from the creditors who voted in favor of the Plan.

### C. The Exculpation and Injunction Should Be Approved

54. The Exculpation in Article IX.D of the Plan exculpates the Exculpated Parties, which have fiduciary obligations to the Estates or have otherwise played an integral role in the Chapter 11 Cases and have participated in good faith throughout the Chapter 11 Cases, for any administrative or other decisions made during the pendency of the proceedings. I understand this provision to be consistent with applicable law because it was proposed in good faith and is limited in scope, as it does not waive or release Causes of Action that are determined to have arisen from willful misconduct, actual fraud, or gross negligence.

55. I support this provision, as the Exculpated Parties are Estate fiduciaries that played an integral role in the formulation, negotiation, prosecution, and implementation of the Plan, and such contribution represents good and valuable consideration to the Debtors, the Estates, and the Debtors' creditors. The Plan could not have been achieved without all such parties and the concessions they made in an effort to reach consensus. Their conduct and decision making in connection with those efforts is deserving of protection from second-guessing. The Exculpation is thus critical to the Plan and should be approved.

56. The Debtors are unaware of any Claims against any Exculpated Party that are being released or otherwise barred through the Plan. Nonetheless, the Exculpation and

injunction provisions of the Plan are important in that they remove the threat of litigation from the Estates and the Exculpated Parties.

57. Similarly, the injunction in Article IX.E of the Plan permanently enjoins the pursuit of the Claims and Causes of Action discharged, released and/or settled under the Plan. The injunctive provision is necessary to implement the Plan and preserve the Debtor Release, the Third-Party Release, and the Exculpation, and I believe it should be approved.

### IV. CONCLUSION

58. In light of the foregoing, I believe that: (a) the Plan and the transactions embodied therein have been structured to accomplish the Debtors' goal of maximizing returns to stakeholders and effectively reorganizing the Debtors; (b) the Plan has been proposed by the Debtors in good faith; and (c) the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction are appropriate, fair, and reasonable.

59. Accordingly, I believe that the Plan satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and other applicable non-bankruptcy laws, as they have been explained to me, and should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 16, 2024    IronNet, Inc.
      Wilmington, Delaware    on behalf of itself and each of its Debtor Affiliates

*/s/ Cameron Pforr*
Cameron Pforr
President and Chief Financial Officer