IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | ) ) ) | Case No. 23-11710 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF ROBERT WAGSTAFF IN SUPPORT OF CONFIRMATION
OF AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
IRONNET, INC. AND ITS DEBTOR AFFILIATES UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Robert Wagstaff, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1. I am a Managing Director of Riveron RTS, LLC ("**RTS**"), and I am duly authorized to execute this declaration (this "**Declaration**") on behalf of RTS. RTS is the financial advisor to the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases.

2. I submit this Declaration in support of confirmation of the *Amended Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 231] (as may be amended, supplemented, or modified from time to time, the "**Plan**").[2]

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge of the Debtors' operations and finances and the Debtors'

---

[1] The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474). The Debtors' mailing address is: IronNet Cybersecurity, Inc., P.O. Box 7395, Halethorpe, MD 21227.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

31117731.5

restructuring activities, information gathered from my review of the Debtors' books and records maintained in the ordinary course of their business, and information supplied to me by members of the Debtors' management and the Debtors' advisors, or employees of RTS working directly with me or under my supervision, direction, or control.  I am authorized to submit this Declaration on behalf of the Debtors, and if I were called upon to testify, I could and would testify competently to the facts set forth herein.

I. **PROFESSIONAL QUALIFICATIONS**

    4.    RTS is a restructuring advisory firm specializing in corporate restructurings, operations improvement, dispute resolution, and valuation.  RTS has extensive experience working with and for distressed companies in complex financial and operational restructurings, both out-of-court and in chapter 11 proceedings throughout the United States.  RTS professionals have advised debtors, creditors, and equity constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, dispute litigation advisory, and interim management services.  RTS and RTS professionals have been involved in numerous chapter 11 and international bankruptcies in capacities including advisor to official committees of creditors, advisor to official equity committees, advisor to secured and unsecured holders of debt, advisor to debtors, and serving as a Chief Restructuring Officer.

    5.    I hold a Bachelor of Commerce in Accounting from Concordia University.  I have more than sixteen (16) years of experience in the restructuring, transaction, and assurance advisory space, and I have led and executed engagements in every major country in the Americas.  This experience includes sourcing and valuing deals, managing restructuring and due diligence engagements from start to finish, and managing post-acquisition integration.  My technical expertise includes turnarounds, financial restructurings and divestitures, buy-side and sell-side

31117731.5

financial due diligence, merger integration, business viability evaluations, valuation, and deal structuring. I have held senior financial and operational positions in the corporate finance practices at Berkeley Research Group, Frontera Capital Advisors, and FTI Consulting, leading complex restructuring and M&A advisory engagements in Latin America and the United States. I have also been involved in numerous chapter 11 cases, including, among others, acting as financial advisor to *Mercon Coffee Corporation, et al.*; Chief Restructuring Officer in the *ORG GC Midco, LLC* (GC Services) case; financial advisor to the Official Committee of Equity Security Holders in the *Clovis Oncology, Inc, et al.* matter; financial advisor to the Official Unsecured Creditors' Committee in *the LATAM Airlines Group S.A., et al.* case; and financial advisor to the Official Committee of Unsecured Creditors' in *1 GC Collections* case. In addition, over the course of the last six years, I have acted as financial advisor to the *Commonwealth of Puerto Rico* and the *Puerto Rico Highways and Transportation Authority* in their respective Title III insolvency proceedings in Puerto Rico.

6. I am the Office Managing Director for RTS's Miami office, and I have been responsible for leading RTS's engagement with the Debtors since November 2023. The Debtors retained RTS as their financial advisor based upon, among other things: (a) the Debtors' need to retain a financial advisory firm to provide advice with respect to the Debtors' restructuring activities; (b) RTS's senior professionals' extensive experience and excellent reputation in providing financial advisory services in chapter 11 cases such as these; (c) RTS's knowledge of the Debtors' industry; and (d) RTS's knowledge of the Debtors' businesses, operations, and capital structure. As a result of my work with the Debtors and my understanding of the Debtors' financial history and business operations, as well as my experience and training in the reorganization of

31117731.5

financially distressed companies, I am well positioned to testify to the statements made herein, including that the Plan satisfies the "best interests" of creditors test and is feasible.

## II.     THE PLAN SATISFIES THE "BEST INTERESTS" TEST (11 U.S.C. § 1129(a)(7))

7.     I understand that the "best interests" test under section 1129(a)(7) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), requires that a bankruptcy court find, as a condition to confirmation of a plan of reorganization, that each holder of a claim or interest in each impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the confirmed plan, that is not less than the amount such holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

8.     Together with my team at RTS, I assisted the Debtors in preparing a hypothetical, reasonable, and good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code, as set forth in more detail in the liquidation analysis (the "**Liquidation Analysis**") attached as Exhibit C to the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 232]. The Liquidation Analysis was completed after extensive analysis and input from the Debtors' management and their other advisors, and represents the Debtors' best estimate of the Cash proceeds, net of liquidation-related costs, that would be available for distribution to Holders of Claims and Interests under a hypothetical chapter 7 liquidation of the Debtors. A complete description of the process and the results of the Liquidation Analysis are set forth therein. Based on my involvement in the preparation of the Liquidation Analysis, and my experience as a restructuring professional in the Debtors' industry, I believe that the methodology and assumptions

31117731.5

used to prepare the Liquidation Analysis were sound and the assumptions and conclusions set forth therein are fair and reasonable under the circumstances.

9. I understand that the "best interests" test is not relevant for the Holders of Claims and Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 7 (OpCo Unsecured Trade Claims), and, at the applicable Debtor's discretion, Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) because such Classes are Unimpaired under the Plan. I further understand that the "best interests" test is not relevant for the Holders of Claims in Class 3 (IronNet Secured Notes Claims), Class 4 (IronNet Unsecured Note Claims), Class 6 (OpCo Secured Note Claims), or Class 8 (OpCo Unsecured Non-Trade Claims) because such Classes voted in favor of the Plan.

10. I believe that the "best interests" test is satisfied with respect to Class 5 (IronNet General Unsecured Claims), Class 11 (Subordinated Claims), and Class 12 (Equity Interest in IronNet). As set forth in the Liquidation Analysis, subject to the assumptions and limitations contained therein, the net liquidation proceeds available for distribution to the Debtors' creditors range from approximately $2,695,732 to $3,847,948. In other words, Holders of Administrative Claims, Priority Tax Claims, and Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (IronNet Secured Note Claims), Class 4 (IronNet Unsecured Note Claims), Class 5 (IronNet General Unsecured Claims), Class 6 (OpCo Unsecured Note Claims), Class 7 (OpCo Unsecured Trade Claims), Class 8 (OpCo Unsecured Non-Trade Claims), Class 9 (Intercompany Claims), Class 10 (Intercompany Interests), Class 11 (Subordinated Claims), and Class 12 (Equity Interests in IronNet) are not expected to receive a recovery in a chapter 7 liquidation because all of the liquidation proceeds would be used to pay Professional Fee Claims, United States Trustee Statutory Fees, and DIP Facility Claims.

Therefore, after applying available liquidation proceeds in accordance with the Bankruptcy Code and applicable law, the anticipated recoveries to each Impaired Class under the Plan implies a greater or equal recovery to the Holders of Claims and Interests in Impaired Classes than the recovery available in a chapter 7 liquidation. As to Holders of Professional Fee Claims, United States Trustee Statutory Fees, and DIP Facility Claims, I believe that such parties are clearly receiving the same, or a greater, recovery under the Plan than in a chapter 7 liquidation.

11.     Based on the Liquidation Analysis, I believe that the Plan satisfies the "best interests" test requirement under section 1129(a)(7) of the Bankruptcy Code.

### III.     THE PLAN IS FEASIBLE (11 U.S.C. § 1129(a)(11))

12.     I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to determine that a chapter 11 plan is feasible and that confirmation of such plan is not likely to be followed by the liquidation or further financial reorganization of the debtor.

13.     In connection with the development of the Plan, the Debtors and RTS prepared detailed financial projections (the "**Financial Projections**"), which were filed with the Plan Supplement as Exhibit I and which detail, among other things, the financial feasibility of the Plan. The Financial Projections indicate, on a *pro forma* basis, that the projected level of Cash flow is sufficient to satisfy the Debtors' obligations under the Plan, to satisfy all of the Reorganized Debtors' future debt and debt related interest cost, research and development, capital expenditure and other obligations during the period set forth therein.

14.     I have reviewed the methods used and material assumptions included in the Financial Projections, and I believe that they were prepared in good faith and based on a set of sound assumptions rooted in the experience of the Debtors' management and advisors, and incorporated material considerations pertaining to the business plan, the current industry environment, and the Debtors' historical operating performance and operating costs.

15. Moreover, the Plan will deleverage the Debtors' balance sheet by approximately $47 million. The Plan will also provide the Debtors with an Exit Facility that includes new money funding in the amount of $15 million to fund the business upon emergence from chapter 11. This commitment by the Exit Facility Lenders is further evidence of the feasibility of the Plan, as I do not believe these parties would make such an investment were the Plan likely to be followed by liquidation or further financial reorganization of the Debtors. Furthermore, based on my experience with the Exit Facility Lenders and their track record of support for the Debtors, I believe that they are committed to ensuring future success for the Debtors post-Confirmation.

16. The Reorganized Debtors expect to operate their business and service their ordinary course operational obligations with operating Cash flow and funds from the Exit Facility, subject to the assumptions and limitations set forth in the Financial Projections.

17. Accordingly, assuming there are no significant deviations from the Financial Projections and the Exit Facility is fully funded, I believe that the Reorganized Debtors will have sufficient resources to make all payments required pursuant to the Plan and that confirmation of the Plan is not likely to be followed by a liquidation or the need for further reorganization. Therefore, I believe the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

## IV.    CONCLUSION

18. Based on the information and assumptions and limitations described above, I believe that the Plan satisfies the "best interests" of creditors test and is feasible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 16, 2024          Respectfully submitted,

*/s/ Robert Wagstaff*
Robert Wagstaff
Managing Director
Riveron RTS, LLC

31117731.5