IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| IRONNET, INC., *et al.*,[1] | ) ) ) | Case No. 23-11710 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF JUSTIN O'MALLEY IN SUPPORT OF CONFIRMATION OF AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF IRONNET, INC. AND ITS DEBTOR AFFILIATES UNDER <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

I, Justin O'Malley, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. I am a Director of Capstone Capital Markets LLC ("**Capstone**"), which has its principal office at 176 Federal St., 3rd Floor, Boston, Massachusetts 02110. Capstone is the investment banker to the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases.

2. I submit this Declaration in support of confirmation of the *Amended Joint Chapter 11 Plan of Reorganization of IronNet, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 231] (as may be amended, supplemented, or modified from time to time, the "**Plan**").[2]

---

[1] The Debtors in the above captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: IronNet, Inc. (9446), IronNet Cybersecurity, Inc. (2655), IronNet International, LLC (7621), IronCAD LLC (1162), and HighDegree, LLC (8474). The Debtors' mailing address is: IronNet Cybersecurity, Inc., P.O. Box 7395, Halethorpe, MD 21227.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Bidding Procedures Order (as defined below), as applicable.

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge of the Debtors' operations, finances, restructuring activities, and sale and marketing process, information gathered from my review of the Debtors' books and records maintained in the ordinary course of their business, and information supplied to me by members of the Debtors' management and the Debtors' advisors, or employees of Capstone working directly with me or under my supervision, direction, or control.[3] I am authorized to submit this Declaration on behalf of the Debtors, and if I were called upon to testify, I could and would testify competently to the facts set forth herein.

I.    **PROFESSIONAL QUALIFICATIONS**

4. Capstone was retained by the Debtors shortly following the Petition Date to provide advice with respect to the Debtors' sale and marketing process (the "**Sale Process**"), discussed more fully below. Capstone's professionals have considerable expertise and experience in providing investment banking services to financially distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out of court proceedings. Representative engagements that investment bankers at Capstone have led in prior chapter 11 cases and restructurings include: *Allegiance Coal USA Limited*, No. 23-10234 (Bankr. D. Del. Feb. 21, 2023); *Party City Holdco Inc*, No. 23-90005 (Bankr. S.D. TX. Jan. 17, 2023); *Taronis Fuels Inc.,* No. 22-11121 (Bankr. D. Del. Nov. 11, 2022); *Red River Waste Solutions, LP*, No. 21-42423 (ELM) (Bankr. N.D. TX. Oct. 14, 2021); *SEGA Biofuels, LLC*, No. 18-50142 (MJK) (Bankr. S.D. Ga. Mar. 7, 2018); *Karmaloop, Inc.*, No. 15-10635 (MFW) (Bankr. D. Del. Mar. 23,

---

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Capstone and are based on information provided by them.

31118181.4

2015); *Gamma Medica-Ideas (USA) Inc.*, No. (C.D. Cal. Aug. 20, 2012); and *Boston Generating, LLC*, No. 10-14419 (Bankr. S.D.N.Y 2010).

5.  I currently serve as a Director in Capstone's Special Situations Investment Banking Group and have more than fifteen (15) years of experience in financial restructuring and special situations investment banking. I have advised numerous companies, creditors, and other stakeholders in chapter 11 reorganizations, mergers, acquisitions, balance sheet restructurings, bankruptcy-related financing, section 363 asset sales, and capital raises in a broad range of industries. Prior to joining Capstone, I was a Vice President of the Special Situations and Capital Solutions Group at Stephens Inc. and, prior to that, I held relevant roles at Blackhill Partners, Alvarez and Marsal, Highland Capital Management, and HBK Capital Management.

## II. THE DEBTORS' SALE PROCESS

6.  I understand that, prior to the Petition Date, the Debtors negotiated a potential restructuring with certain of their prepetition secured creditors, and ultimately executed the DIP Term Sheet. I further understand that the DIP Term Sheet sets forth the framework for a chapter 11 plan, including a toggle structure to enable the Debtors to consummate either a Sale Transaction or the Restructuring, and includes milestones for a "dual-track" sale and confirmation process.

7.  As noted above, Capstone was retained by the Debtors shortly following the Petition Date to run a comprehensive marketing process to identify: (a) a purchaser for a going-concern sale of some or all of the Debtors' assets; (b) an alternate plan sponsor willing to provide greater recoveries than those contemplated under the Restructuring set forth in the DIP Term Sheet; or (c) any other transaction that maximizes the value of the Debtors' estates and provides for the highest and best recoveries to the Debtors' stakeholders.

8.      On November 10, 2023, the Court entered the *Order (I)(A) Establishing Bidding Procedures for Sale of Substantially All Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, and (II) Granting Related Relief* [Docket No. 117] (the "**Bidding Procedures Order**"), and thereby approved Bidding Procedures for the sale of substantially all of the Debtors' assets or the purchase of the equity in the Reorganized Debtors. I understand that the Bidding Procedures Order also approved the Plan proposed by the DIP Lender and derived from the DIP Term Sheet as a Qualified Bid.

9.      Following the entry of the Bidding Procedures Order, Capstone continued to run the Sale Process for the Debtors' assets or the equity in the Reorganized Debtors. Among other things, Capstone prepared a company teaser (the "**Teaser**"), a comprehensive confidential information memorandum (the "**CIM**"), and additional supporting information and analyses in an electronic data room (the "**Data Room**") that provided potential investors and bidders with the necessary information upon which to make a proposal.

10.     Capstone solicited approximately 114 potentially interested parties, including, but not limited to, strategic and financial buyers. More specifically, Capstone distributed the Teaser to potentially interested parties that provided an overview of the Debtors' business and offered to provide additional information upon the execution of a non-disclosure agreement ("**NDA**"). Approximately twenty-five (25) potential buyers executed NDAs and received access to the Data Room. These potential buyers also received the CIM, which included more information on the Debtors. The potential buyers were afforded the opportunity to ask any questions they or their advisers had regarding the information shared. In addition, they had the opportunity to meet with the Debtors' management team to understand their strategic plan for the business first hand, and were given the opportunity to schedule detailed financial, legal, and

31118181.4

operational due diligence sessions with the relevant management personnel. Ultimately, five (5) potential buyers engaged in discussions with the Debtors' management.

11. The Bidding Procedures Order originally required each potential buyer to submit its bid by 5:00 p.m. (ET) on December 12, 2023. To provide potential bidders with additional time to complete due diligence and obtain the required approvals to submit offers, the Debtors extended the bid deadline to 5:00 p.m. (ET) on January 4, 2024 (the "**Bid Deadline**"). Despite the extended Bid Deadline, the Debtors ultimately did not receive any Bids other than the Plan. Accordingly, on January 9, 2024, the Debtors filed the *Notice of Cancellation of Auction* [Docket No. 297] cancelling the Auction.

12. In summary, the Sale Process run by Capstone on behalf of the Debtors was robust; Capstone contacted over 114 parties, including, but not limited to, financial sponsors and strategic parties, offered significant amounts of due diligence and management time, and engaged with several interested parties prior to the Bid Deadline. The Sale Process was designed to balance the need for maximizing value with reaching an expeditious conclusion in order to avoid any unnecessarily extended negative impact on the Debtors' operations that could result from a protracted period of uncertainty. However, the Sale Process did not ultimately result in any Bids other than the Plan. I believe that the Sale Process timeline was flexible where needed and that the Debtors made allowances where required, including by ultimately extending the Bid Deadline by over three weeks.

13. Based on the results on the Sale Process conducted by Capstone, I believe that the Restructuring set forth in the Plan is the best, and only, option available to maximize value for the Debtors' creditors and stakeholders. The Debtors, through Capstone, ran a robust, carefully calibrated Sale Process for approximately two (2) months, which entailed arm's-length, good-faith

31118181.4

negotiations between the Debtors and potential buyers. Capstone and the Debtors' other advisors solicited interest from a diverse set of potential strategic and financial partners. In the end, however, no Bids were received other than the Restructuring set forth in the Plan.

14. Accordingly, I believe the Restructuring is the best available option under the circumstances to maximize value for the Debtors' stakeholders, and the Court should therefore confirm the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 16, 2024                               Respectfully submitted,


                                                      */s/ Justin O'Malley*
                                                      Justin O'Malley
                                                      Director
                                                      Capstone Capital Markets LLC